TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00106-CV






Daneshjou Company Inc. and M. B. "Benny" Daneshjou, Appellants


v.


Sandra Bullock; John W. Bullock, Trustee of Band-Aid Trust; Austin Air Conditioning;
Austin Fine Floors; DMS Trading; Felipe Hernandez; Michael Hood; King's Contracting;
LOC Consultants; Loma Excavation, Inc.; Wilberto Montiel; Perfect Lawns of Austin;
Pfister Plumbing; QSI Custom Cabinets; Robert Bellamy Designs; Trim Ron;

Raymond Sandoval; David V. Shrum; and Eddie Tausch; Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. GN101929, HONORABLE PAUL DAVIS, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Appellants Daneshjou Company, Inc. ("DCI") and M. B. "Benny" Daneshjou appeal
from the judgment of the district court on claims arising from the design and construction of a house
and grounds for Sandra Bullock and John W. Bullock, trustee of Band-Aid Trust. Appellants have
settled their claims with the Bullocks and dismissed their appeal concerning those claims. They
continue to pursue their appeal of the judgment concerning claims against construction
superintendent David V. Shrum and various subcontractors who worked on the Bullock project.

 Appellants contend that the trial court erred by (1) granting motions to dismiss or
for summary judgment on claims involving certain subcontractors; (2) basing its judgment on the
jury's assignment of responsibility to a number of the subcontractors; and (3) directing a verdict
on their DTPA and common-law indemnity claims against Shrum. Appellants also contend that
insufficient evidence supports the jury's finding that Shrum's breach of his contract was excused,
and that Shrum is not entitled to attorneys' fees from appellants. We reverse the assessment of
attorneys' fees against Daneshjou, individually, and affirm the judgment in all other respects.


Factual and Procedural Background

 Appellants designed and, with the assistance of numerous subcontractors, built a
house and outbuildings, remodeled an existing house, and landscaped grounds for the Bullocks. 
Shrum was the superintendent for the project as a DCI employee from April 1998 to July 1999, and
as an independent contractor from August 1, 1999 to March 1, 2000. The targeted completion date
was December 31, 1999.

 The house and outbuildings had structural and drainage problems--the nature, degree,
and causes of which were disputed at trial. In March 2000, the Bullocks halted work by DCI. Some
work intended to remediate particular problems continued at the Bullocks' direction. DCI sued
the Bullocks for breach of contract and tortious interference with employment and business
relationships, alleging that the Bullocks delayed construction of the project. The Bullocks
counterclaimed against DCI and sued Daneshjou for breach of contract, statutory fraud, fraudulent
inducement to contract, common-law fraud, deceptive trade practices, breach of express and implied
warranties, and breach of fiduciary duty. They alleged that structures and improvements were
negligently built and grossly substandard. Appellants then filed third-party claims against various
subcontractors, raising claims centered on the premise that their work was deficient.

 The district court granted several subcontractors' motions seeking dismissal or
summary judgment, on both traditional and no evidence theories. The claims resolved by many
of these judgments and orders of dismissal were severed and those judgments became final. Seven
of the severed cases were appealed separately in cases decided in a consolidated opinion. See
Daneshjou Co. v. Goergen, No. 03-04-00730-CV, 2008 Tex. App. LEXIS 6036 (Tex. App.--Austin
Aug. 8, 2008, pet. denied) (mem. op.). Similar motions on claims involving other subcontractors
were resolved before and during the trial, and others remained pending.

 At trial, the jury made several findings concerning the proportionate responsibility
for damages owed among appellants, Shrum, the Bullocks, and various subcontractors, some of
whom were at trial, some of whom did not appear, and some of whom had been dismissed
and severed from this case. The jury's findings that appellants committed acts that damaged the
Bullocks are not challenged in this appeal due to the post-trial settlement between appellants and the
Bullocks. (1) With regard to Shrum, the jury found as follows:

 


 that he breached his duties under the Independent Contractor Management
Agreement effective August 1, 1999 by failing to handle the day-to-day
management of on site operations at the River Hills Project, including
scheduling, ordering of materials;

 that his failure to comply with the ICMA was excused; and 

 that DCI failed to indemnify him for claims arising from the project and not
caused by any fault of Shrum.



With respect to the subcontractors, the jury found:



 that King's Contracting, Wilberto Montiel d/b/a Will Construction, and Raymond
Sandoval/Ultimate Roofing, Inc./Roof Tech Systems failed to comply with a
warranty, which was a producing cause of damages to the Bullocks, and failed
to comply with their contracts with DCI; and

 that Loma Excavation, Inc., Michael A. Hood, Felipe Hernandez, LOC
Consultants, and Austin Fine Floors did not damage the Bullocks by breaching
a warranty and did not breach a contract with DCI.



The jury apportioned responsibility for the Bullocks' damages as follows: DCI, 80%; Daneshjou,
17%; King's Contracting, Montiel, and Sandoval, 1% each; and Shrum, Loma, Hood, Hernandez,
LOC, and Austin Fine Floors, 0% each. The jury also found that a reasonable fee for Shrum's
attorney for trial was $133,407.39.


Discussion

 Appellants raise several complaints regarding the district court's rulings. Appellants
complain that evidence raising genuine issues of material fact renders summary judgments granted
to appellees erroneous. They contend that the trial court erred by admitting evidence concerning
the work of subcontractors who had been dismissed or granted summary judgment because that
evidence prejudiced the jury against appellants. Appellants also contend that the court erred by
directing a verdict for Shrum and refusing to submit appellants' requested jury submissions
concerning their claims for DTPA violations and common-law indemnity. Appellants contend that
the jury's finding that Shrum's breach of his contract with appellants was excused is not supported
by legally and factually sufficient evidence. Appellants also assert that the trial court erred by
rendering judgment in conformity with the jury's verdict that Shrum and several subcontractors
had no responsibility for the Bullocks' damages and that three subcontractors each had 1%
responsibility for the Bullocks' damages. Appellants also contend that the district court erred in
awarding attorneys' fees to Shrum.


Gaps in the Record

 Some documents relating to the dismissals and summary judgments challenged by
appellants are absent from the record. Appellants assert without dispute that some of the documents
were never filed with the trial court, but were merely transmitted among the parties. This includes
a number of the motions for summary judgment or dismissal, appellants' responses, and the orders
on the motions. (2)

 Although the summary judgment movants bear the burden to demonstrate their
entitlement to relief at the trial court, the appellants bear the burden on appeal to bring forward
the record of the summary judgment evidence to provide the appellate courts with a basis to review
their claim of harmful error. See Tex. R. App. P. 33.1, 34.5(a); Enterprise Leasing Co. v. Barrios,
156 S.W.3d 547, 549 (Tex. 2004). If pertinent motions or evidence considered by the trial court are
not included in the appellate record, an appellate court must presume that the omitted motions or
evidence support the trial court's judgment. Barrios, 156 S.W.3d at 550; Mallios v. Standard Ins.
Co., 237 S.W.3d 778, 782 (Tex. App.--Houston [14th Dist.] 2007, pet. denied).


Claims severed

 Appellants' claims against LOC Consultants and Loma Excavation are not properly
part of this appeal. All claims involving Loma Excavation were determined and severed into
trial court cause number GN-403033 by order signed August 26, 2004, and all claims against LOC
were severed into a separate proceeding given the trial court cause number GN-403689 by order
signed October 6, 2004. (3) The notice of appeal in this cause, No. GN-101929, filed after both
severances, did not serve to appeal the judgments or any rulings concerning the severed claims by
appellants against LOC or Loma. Accordingly, issues relating to the trial court's rulings regarding
the claims against LOC and Loma are not part of this appeal.


Claims dismissed for untimely service

 Claims against Eddie Tausch and Pfister Plumbing were apparently dismissed because
of untimely service of citation. The appellate record lacks the motions to dismiss by these parties
and any order granting such motions. We find no written order or record of a ruling disposing of
the claims relating to Pfister and Tausch other than the final judgment denying all relief not granted. 
Pfister filed a brief, but Tausch did not. Appellants contend that we do not need the motion or order
to reverse the dismissal of claims against Pfister because the unfairness of the dismissal overcomes
any unfairness from reversing in the absence of a record. Appellants contend that their diligence
in attempting to serve Tausch is reason enough to reverse the dismissal. Neither the record, the
argument, nor comparison to our decision in a related case persuade us that reversal of these
dismissals is warranted.

 In their motion for judgment notwithstanding the verdict, appellants contended
that the trial court erred by dismissing their claims against Tausch for untimely service, asserting
that they:



 made diligent efforts after that date to timely serve the parties, but they were
permitted only a short time in which to do so. Therefore, DCI and Daneshjou have
demonstrated that they acted with due diligence in serving Tausch. Thus, the Court
should not have dismissed Tausch in the face of DCI and Daneshjou's diligence,
despite the fact that Tausch [was] served two or three days after the deadline.

 

Appellants did not cite to or supply evidence of this diligence in their motion, nor did they assert
when service was accomplished. Appellants reiterate these assertions on appeal without citation to
or inclusion of any evidence.

 The parties do not dispute that Tausch was not served timely. We previously rejected
appellants' similar argument concerning claims against another defendant, G. P. Equipment Co.,
which were dismissed based on untimely service and severed from the underlying suit. Daneshjou,
2008 Tex. App. LEXIS 6036, at *6-8. As noted in that opinion, the trial court signed an amended
scheduling order in the underlying suit on November 23, 2003--more than two years after the
original petition was filed and almost three months after the fifth amended petition was filed
joining new defendants. (4) The court set a deadline for service of citation of November 30, 2003. 
Although DCI contended that it diligently attempted service in the short time allotted, we found
no abuse of discretion when the court dismissed the claims against GP because citation was served
on December 2, 2003. Id. As with the claims against GP, the record here does not provide a basis
on which to reverse the dismissal of the claims against Tausch.

 Although the parties disagree as to whether Pfister's motion sought dismissal or
summary judgment, they agree that the basis of the motion was untimely service and that the
court granted the motion. Appellants make no specific allegations of error or citations to evidence
regarding Pfister. Neither the record nor the briefs provide anything other than appellants' bare
assertion that the court did not permit them sufficient time to serve Pfister. As with Tausch and
GP, there is no evidence or argument that Pfister was served in a timely fashion. The record and
arguments provide no basis on which to reverse the dismissal of claims against Pfister.


Summary judgments

 Appellants contend that the trial court erred by granting summary judgments on
claims against Loma, Perfect Lawns of Austin, Robert Bellamy Designs, QSI Custom Cabinets, Inc.,
DMS Trading, Austin Air Conditioning, and Pfister Plumbing. Appellants discuss and argue
evidence concerning only Loma and Perfect Lawns. Regarding the remaining appellees, appellants
stated, "Appellants presented similar evidence opposing the motions for summary judgment of
the additional parties: Bellamy, QSI, DMS, Austin A/C, and Pfister." (5) This bare assertion
is not supported by any citation to the record, and therefore, error on this point is waived. See
Tex. R. App. P. 38.1(i); (6) Tri-Steel Structures, Inc. v. Baptist Found., 166 S.W.3d 443, 452
(Tex. App.--Fort Worth 2005, pet. denied). As discussed above, the claims involving Loma were
severed from this suit below and are not part of this appeal. We will examine the no evidence
summary judgment granted on claims against Perfect Lawns. (7)

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). The filing of a no evidence motion places the burden on the
non-moving party to present evidence raising an issue of material fact as to the elements specified
in the motion. Tex. R. Civ. P. 166a(i); Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006). We consider the evidence in the light most favorable to the non-movant and resolve
any doubt in the non-movant's favor. See Tamez, 206 S.W.3d at 582; Western Invs., Inc. v. Urena,
162 S.W.3d 547, 550 (Tex. 2005). If a trial court's order does not specify the ground on which
summary judgment is granted, the judgment will be affirmed if any theory advanced and preserved
for appellate review is meritorious. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211,
216 (Tex. 2003).

 Appellants alleged that Perfect Lawns, along with Loma, performed the grading
work for surface draining and drainage patterns. Appellants also alleged that Perfect Lawns, along
with Robert Bellamy Designs, performed the landscaping, landscaping architecture, and irrigation
for the project. In their brief, appellants assert that they produced evidence raising a material fact
issue about Perfect Lawns's responsibility for the Bullocks' damages. The cited excerpts from
the report of June Melton--Bullock's consulting engineer--discuss drainage problems but do not
mention, much less assign blame, to Perfect Lawns. Rather, Melton prefaces his drainage discussion
as follows:


 From all available information it appears that the Architect failed to consult with a
civil engineer who could have assisted in the preparation of a proper site plan. The
Architect's failure resulted in the foundation being set too low with respect to the
surrounding grades. This failure led to a continuing chain of unfortunate events and
extraordinary waste.


In another report, DCI's expert Larry Parker rejects some of Melton's conclusions, opining instead
on the involvement of the "Owner" in decisions that led to drainage problems. Again, however,
there is no mention of any act or omission by Perfect Lawns. Only in his affidavit does Parker
mention Perfect Lawns, asserting:


 Perfect Lawns of Austin was responsible for coordinating with Robert Bellamy to
provide the labor and installation of the landscaping plan's materials. They applied
the layer of topsoil and berms on the project. In the Melton report, pooling may be
caused in part by improper grading, and may be related to the use of berms around
trees in the front yard. I concur with Melton's findings.


Parker's affidavit does not establish what Perfect Lawns did or failed to do that damaged the
Bullocks. The affidavit does not establish whether or how Perfect Lawns was negligent, breached
a warranty or contract, engaged in a deceptive trade practice, or otherwise harmed appellants. 
Appellants also referred in their response to the motion for summary judgment to a deposition of
Loma owner Jim Burton, but that document is not attached to that pleading. The arguments and
record do not support a conclusion that the trial court erred by granting Perfect Lawns's no evidence
motion for summary judgment. The summary judgments favoring Robert Bellamy Designs,
QSI Custom Cabinets, Inc., DMS Trading, Austin AC, and Pfister Plumbing are also affirmed.




Trial


 The evidence at trial included several weeks of testimony and more than a thousand
exhibits. The evidence focused on damages asserted to have resulted from subpar construction
and from billing disputes. There was consensus that the project needed additional work, but disputes
existed over the source, nature, and severity of the problems, as well as the nature, extent, and cost
of the solutions.

 Generally, appellants' evidence tended to show that the problems with the project
emanated from indecision, a rushed schedule, interference, and failure to remedy or mitigate by
the Bullocks; substandard work by subcontractors; and inadequate supervision by Shrum. Other
evidence tended to show that the Bullocks were decisive and responsive, that appellants' allocation
of resources left Shrum with inadequate numbers of workers and caused the rush, and that
Daneshjou's design and plans were the fundamental and inescapable source of the main house's
structural problems. Appellants' evidence suggested that a few well-planned repairs would remedy
defects throughout the project for a relatively low price, while other witnesses testified that the
roof could collapse at any moment and that removal and replacement of the roof was required. One
witness advocated bulldozing the main house entirely. The dispute over billings centered on what
items were included as costs in the cost-plus contract, what the parties agreed to concerning
multiplier rates for such things as overhead, and whether labor supplied by appellants and
their affiliated company was properly billed. Appellants adduced evidence that the billings were
essentially proper, that improper billings had been addressed at the end of the contract, and that the
Bullocks agreed to and understood all of the contract terms and approved the billings including
the charges for in-house labor. The Bullocks presented evidence to the contrary.

 Appellants raise several issues challenging evidentiary rulings, the jury charge,
and the verdict and judgment. They contend that evidence of their indemnity agreements with the
various subcontractors should have been admitted at trial, and contend that evidence concerning the
work of dismissed parties should not have been admitted at trial. They also challenge the court's
inclusion of LOC as well as the omission of other subcontractors in the proportionate responsibility
question in the charge. In addition, appellants raise several complaints about the trial as it concerns
Shrum. They contend that the trial court should not have directed a verdict for Shrum on DCI's
claim for common-law indemnity from Shrum and for damages due to his violation of the DTPA. 
They argue that the evidence was legally and factually insufficient to support the jury's findings
that DCI's breach of its contract with Shrum excused Shrum's performance (and, therefore, his
breach of that contract), and that Shrum had no responsibility for the Bullocks' damages. Appellants
similarly contend that the evidence was legally and factually insufficient to support the findings that
three of the subcontractors each bore only 1% of the responsibility for the Bullocks' damages, and
that the remainder of the subcontractors bore none. Finally, appellants contend that Shrum is not
entitled to attorneys' fees.


Exclusion of evidence regarding indemnity

 Appellants assert that they were entitled to admission of evidence concerning
indemnity agreements between themselves and Austin AC, Perfect Lawns, and Cascade Pools
despite the summary judgments granted to those appellees on the indemnity claims. (8) Appellants
assert that the summary judgments were erroneously granted. As we concluded in the previous
related appeals with respect to claims against other subcontractors, the trial court did not err by
granting summary judgment against appellants on their claims for indemnity. Daneshjou, 2008 Tex.
App. LEXIS 6036, at *30-35. We reiterate that analysis here.

 Indemnity agreements must provide fair notice to be enforceable. Dresser Indus., Inc.
v. Page Petroleum, Inc., 853 S.W.2d 505, 508-09 (Tex. 1993). The fair notice requirement
comprises the express negligence doctrine and conspicuousness. Storage & Processors, Inc.
v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004). The express negligence doctrine requires that an intent
to indemnify one of the parties from the consequences of its own negligence must be specifically
stated in the four corners of the document. Id. at 192. Compliance with the express negligence
requirement is a rule of contract interpretation and, thus, a question of law for the court. Fisk Elec.
Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex. 1994). The conspicuousness
requirement mandates that something appear on the face of the contract to attract the attention of a
reasonable person. Reyes, 134 S.W.3d at 192. Language is conspicuous if it appears in larger
type, contrasting colors, or otherwise calls attention to itself. Dresser, 853 S.W.2d at 511; see also
Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (West Supp. 2008). Whether an agreement meets
the conspicuousness requirement is a question of law for the court. Dresser, 853 S.W.2d at 509. 
An agreement that does not satisfy either of the fair notice requirements is unenforceable as a
matter of law, unless both contracting parties have actual knowledge of the contract's terms. Reyes,
134 S.W.3d at 192.

 There was no evidence that appellants had valid indemnity agreements with
these appellees. No written contract relating to their obligations or duties in the record contains
an indemnity clause. There is no allegation or evidence that these appellees otherwise agreed to
indemnify appellants when agreeing to work on the house. The indemnity language that appellants
tout is printed on a check for payment rather than as part of a writing memorializing the parties'
agreement regarding work to be performed or materials to be supplied. It is in the midst of the
paragraph discussing the various effects of accepting payment, including release of liens and
relinquishment of claims. Although it appears in a paragraph above the signature line on a page
attached to a check, the indemnity language is inconspicuous as it is in small print in the midst of
other topics printed in similarly sized and colored type. (9) There is no evidence that additional
consideration was paid in exchange for the alleged agreement to indemnify proposed as a part of the
payment. An inconspicuous indemnity provision simply added to a check for payment after the
formation of the original contract, without more, is not enforceable. See Dresser, 853 S.W.2d at 511. 
The summary judgments on these claims were supported. Appellants were not entitled to present
evidence to the jury on their indemnity claims that had already been resolved as a matter of law on
summary judgment.

Admission of evidence concerning dismissed parties

 Appellants contend that the trial court erred by dismissing various subcontractors
before trial as a matter of law and then admitting evidence of those parties' work on the project. The
court dismissed appellants' claims against several subcontractors after the Bullocks settled their
unfiled claims against those subcontractors. See Tex. Civ. Prac. & Rem. Code Ann. § 33.015(d)
(West 2008) ("No defendant has a right of contribution against any settling person."). Appellants
complain that admission of evidence concerning the work performed by those subcontractors
was unfairly prejudicial to appellants because evidence of the subcontractors' defective work was
in the record, but the subcontractors were not at trial to have their share of responsibility assessed. 
Appellants contend that their contribution and indemnity claims were adversely affected by
this procedure. Appellants contend that the admission of the evidence and the absence of the
subcontractors explains why appellants collectively bear a 97% share of the responsibility for
damages assessed by the jury.

 Although we have concluded that the trial court did not err by granting the motions
for summary judgment and dismissal that were presented for our review, (10) whether evidence of the
dismissed parties' work should have been admitted is a separate question. We review a trial court's
admission or exclusion of evidence for an abuse of discretion. In re J.P.B., 180 S.W.3d 570, 575
(Tex. 2005); Goodson v. Castellanos, 214 S.W.3d 741, 754 (Tex. App.--Austin 2007, pet. denied). 
A trial court abuses its discretion if it acts without reference to any guiding rules and principles or
if the act complained of is arbitrary and unreasonable. City of Brownsville v. Alvarado, 897 S.W.2d
750, 754 (Tex. 1995); see also Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687
(Tex. 2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the
record to support it. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). 
Relevant evidence may be excluded if its probative value is substantially outweighed by the danger
of unfair prejudice. Tex. R. Evid. 403.

 Appellants' argument rests in large part on the premise that the admission of
the evidence of conduct of absent third parties was unfairly prejudicial because proportionate
responsibility of persons dismissed from the case could not be assigned to them in their absence. (11) 
This argument ignores the statutory procedure for submitting an issue concerning the responsibility
of settling persons and third parties. The proportionate responsibility statute expressly authorizes
the trier of fact to determine the percentage of responsibility for each claimant, defendant, settling
person, and designated responsible third party in cases involving negligent acts or omissions,
defective or unreasonably dangerous products, or other conduct or activities that violate an
applicable legal standard such as a warranty. (12) See Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)
(West 2008); see also JCW Elecs., Inc. v. Garza, 257 S.W.3d 701, 707 (Tex. 2008). A "settling
person" is "a person who has, at any time, paid or promised to pay money or anything of monetary
value to a claimant in consideration of potential liability with respect to the personal injury, property
damage, death, or other harm for which recovery of damages is sought." Id. § 33.011(5). Under this
statute, appellants could have requested submission of a jury question regarding the proportionate
responsibility of the subcontractors who settled with the Bullocks. Indeed, a question regarding
Loma's share of the responsibility was submitted even though the claims against Loma had been
resolved and severed before trial.

 Evidence regarding the allegedly subpar work by various subcontractors was relevant
to many claims. It was relevant to the proportionate responsibility of subcontractors submitted to
the jury, and could have benefitted appellants by prompting the jury to apportion a greater share of
responsibility to the subcontractors who had settled and were not at trial defending themselves. 
Evidence of the subcontractors' work was probative of whether appellants delivered the house
that appellants agreed to construct in compliance with any applicable contract or warranty. Also,
the quality of the subcontractors' work potentially pertained to whether appellants or Shrum could
be held responsible for allowing substandard work to stay uncorrected. The quality of the house
designed by Daneshjou and built by DCI was one of two central issues (along with the billing
disputes) in this case. We are not persuaded that evidence regarding the quality of the house built
for the Bullocks was unfairly prejudicial to its designer and builder simply because the third-party
subcontractor potentially responsible for a particular task was absent from the trial after settling with
the Bullocks. (13) Appellants have not shown error in the admission of evidence of the dismissed or
severed subcontractors' work.


Submission of questions regarding proportionate responsibility of subcontractors

 Appellants also complain about the questions submitted regarding the proportionate
responsibility of subcontractors. They contend that the trial court erred by allowing the jury to
assign responsibility to LOC. They also complain that the trial court erred by not allowing the jury
to assign responsibility to other subcontractors, some of whom were severed before trial after
the claims against them for contribution and indemnity were rejected either through summary
judgment or dismissal.

 Appellants contend that including LOC in the jury charge was improper because
LOC was a settling party. They contend that the addition of LOC in the charge and the entering of
a take nothing judgment prejudiced appellants because the trial court had severed LOC from this
case. Appellants failed to preserve this error by objecting to the inclusion of LOC in the charge. See
Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 274. While we agree that LOC was severed from this case
and is not properly a party to this appeal, we do not agree that the trial court erred by submitting a
question concerning LOC's proportionate responsibility. Even if LOC did settle before submission,
the statute specifically authorizes the fact-finder to determine the percentage of responsibility
attributable to a settling party. See Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)(3). (14) Appellants
alleged that LOC failed to perform its obligations adequately, and there was evidence in the record
concerning its performance. Even if the submission of LOC were erroneous, appellants have shown
no harm from the entry of a take nothing judgment against a defendant whose responsibility they
argue should not have been submitted. Although LOC is not properly an appellee in this appeal, the
submission of a question regarding its share of responsibility was not an error in this trial.

 Appellants assert that "other remaining subcontractors that were not held accountable
for a proportion of the fault for the defective construction likewise must be brought to court for
a trial on the merits regarding their work on the project." They assert that they were entitled to
contribution from subcontractors who were dismissed before trial. They complain that evidence
concerning these subcontractors' "defective work performance" was presented to the jury, increasing
the damage award to the Bullocks without a concordant apportionment of responsibility to the
subcontractors who did the work. These contentions lack merit or have been waived. (15) To the extent
appellants refer to subcontractors whose take nothing summary judgments on the merits we have
affirmed, we find no error or harm in failing to submit their share of the responsibility because there
is no legal basis on which the jury could assess responsibility against parties judicially determined
to have no responsibility. To the extent appellants refer to subcontractors who were dismissed
after settling their liability directly with the Bullocks, a question regarding those subcontractors'
proportionate responsibility could have been submitted to the jury had it been requested just as it was
with respect to LOC and Loma. Appellants do not direct us to a properly preserved complaint in the
record that the court erroneously failed to submit a question requested by appellants regarding the
proportionate responsibility of any party. (16) See Tex. R. Civ. P. 278; Sears, Roebuck & Co. v. Abell,
157 S.W.3d 886, 892 (Tex. App.--El Paso 2005, pet. denied). Appellants have not raised an issue
concerning the trial court's submission of proportionate responsibility that requires reversal.


Judgment on claims involving Shrum

 Appellants challenge several aspects of the trial court's judgment with respect to
their claims against Shrum. Appellants contend that the court erred by directing a verdict on their
claims for common-law indemnity and for violations of the DTPA by Shrum. They further contend
that no evidence or factually insufficient evidence supports the jury's finding that Shrum's breach
of his contract was excused. Appellants also argue that no evidence or factually insufficient
evidence supports the jury's findings that Shrum was responsible for none of the Bullocks' damages. 
Appellants further contend that Shrum is not entitled to attorneys' fees under either a contract or
DTPA theory as a matter of law. Daneshjou asserts that Shrum is not entitled to attorneys' fees from
him because Shrum did not have a contract with him and the trial court's finding that Daneshjou's
DTPA claims were groundless or brought in bad faith was erroneous as a matter of law because
Daneshjou did not individually plead a DTPA cause of action against Shrum.


 Directed verdict on indemnity and DTPA claims

 Appellants contend that the trial court erred by directing a verdict in Shrum's favor
on appellants' claims for common-law indemnity and violations of the DTPA by Shrum. A directed
verdict is proper when a plaintiff fails to present evidence raising a fact issue essential to the
plaintiff's right of recovery or when the plaintiff admits or the evidence conclusively establishes
a defense to the plaintiff's cause of action. Prudential Ins. Co. v. Financial Review Servs., Inc.,
29 S.W.3d 74, 77 (Tex. 2000). An appeal from the denial of a motion for directed verdict is in
essence a challenge to the legal sufficiency of the evidence. Solares v. Solares, 232 S.W.3d 873, 878
(Tex. App.--Dallas 2007, no pet.). When reviewing a directed verdict, we view the evidence in the
light most favorable to the party against whom the verdict was rendered and disregard all contrary
evidence and inferences. See Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994);
White v. Southwestern Bell Tel. Co., 651 S.W.2d 260, 262 (Tex. 1983). If there is any conflicting
evidence of probative value that raises a material fact issue on any theory of recovery, that issue
should be submitted to the jury. Szczepanik, 883 S.W.2d at 649; White, 651 S.W.2d at 262.

 Appellants contend that the evidence raised a material fact issue concerning whether
Shrum owed appellants a common-law duty to indemnify them. We conclude that appellants have
not shown error or harm. Common-law indemnity persists in situations of purely vicarious liability. 
Aviation Office, Inc. v. Alexander & Alexander, Inc., 751 S.W.2d 179, 180 (Tex. 1988). "[I]n a case
in which one defendant's liability is premised solely on respondeat superior, that defendant's liability
is purely vicarious, and a claim for common law indemnity exists." Vecellio Ins. Agency, Inc.
v. Vanguard Underwriters Ins. Co., 127 S.W.3d 134, 138 (Tex. App.--Houston [1st Dist.] 2003,
no pet.). A defendant whose liability is not purely vicarious may be entitled to contribution, but he
is not entitled to common-law indemnity. See Aviation Office, 751 S.W.2d at 180. The Bullocks
did not assert that appellants were vicariously liable for Shrum's acts and omissions. Rather, they
asserted claims based on acts and omissions by Daneshjou and DCI, some of which were not
attributable to Shrum. Appellants were not entitled to a jury question on the issue of common-law
indemnity, and the court did not err by granting the motion for directed verdict on that issue. 
Further, the jury's findings that Shrum has zero responsibility and appellants have 97% responsibility
for the Bullocks' damages illustrate that the absence of a common-law indemnity question did
not harm appellants.

 Appellants also assert that the trial court erred by granting Shrum's motion
for directed verdict as to the DTPA claims. Warranties must exist under common-law or statute
before they can be enforced through the DTPA. Parkway Co. v. Woodruff, 901 S.W.2d 434, 438
(Tex. 1995). Appellants alleged that Shrum breached a warranty by failing to perform his duties as
superintendent in a good and workmanlike fashion, and failing to monitor, inspect, and control all
aspects of the construction of the house. Shrum contends that he made no express warranties and
that implied warranties do not attach to the services he provided.

 We find no evidence of express warranties from Shrum to appellants. The ICMA
between Shrum and DCI states that "Shrum shall devote sufficient time to the Project to complete
the Project within the time proposed in the schedule and in a professional manner." The ICMA
states that it is the entire agreement between the parties and that "[a]ny other agreements or
representations respecting this Agreement not expressly set forth in this Agreement are null and
void." There is no evidence of express warranties from Shrum to appellants.

 There is also no evidence of any implied warranties. An implied warranty arises
by operation of law when public policy mandates. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d
349, 353 (Tex. 1987). There must be a compelling need to justify an implied warranty for
service transactions. Cessna Aircraft Co. v. Aircraft Network, L.L.C., 213 S.W.3d 455, 467
(Tex. App.--Dallas 2006, pet. denied) (citing Rocky Mtn. Helicopters, Inc. v. Lubbock County Hosp.
Dist., 987 S.W.2d 50, 53 (Tex. 1998)). A compelling need for an implied warranty does not exist
where other adequate remedies are available. Rocky Mtn., 987 S.W.2d at 53. Where a party has
negligence and/or breach of contract claims available, an implied warranty does not arise. Id.; see
also Codner v. Arellano, 40 S.W.3d 666, 672-75 (Tex. App.--Austin 2001, no pet.). The supreme
court has recognized an implied warranty to repair or modify existing tangible goods in a good
and workmanlike manner when a seller of a manufactured home failed to properly install or
repair plumbing in the home. Melody Home, 741 S.W.2d at 353-54. There is no evidence, however,
that Shrum actually repaired or modified any tangible goods. The only evidence is that, while a
DCI employee and as an independent contractor, he supervised subcontractors who did so. More
important, however, appellants had contract remedies that were submitted to the jury. The trial court
did not err by granting directed verdict on and refusing to submit to the jury questions regarding
appellants' claims for relief for breaches of warranties by Shrum.


 Shrum's lack of responsibility for Bullocks' damages

 Appellants challenge the evidentiary support for jury findings that resulted in Shrum
being responsible for none of the Bullocks' damages. Although the jury found that Shrum breached
his contract with DCI, it also found that his breach was excused by DCI's acts or omissions. The
jury separately found that Shrum was responsible for zero percent of the damages to the Bullocks. 
Appellants contend that these findings are not supported by legally or factually sufficient evidence.

 In determining whether there is legally sufficient evidence to support the finding
under review, we examine the record for evidence and inferences that support the challenged finding,
while disregarding all contrary evidence and inferences. We must consider evidence favorable to
the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a
reasonable factfinder could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). When
an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have
the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support
the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). A party challenging
the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof
at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law,
all vital facts in support of the issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). 
A legal sufficiency challenge may be sustained when (1) the record discloses a complete absence of
evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). Evidence is conclusive
"only if reasonable people could not differ in their conclusions, a matter that depends on the facts
of each case." City of Keller, 168 S.W.3d at 816.

 In determining a factual sufficiency challenge, we weigh and consider all the
evidence in the record. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). When conducting a
factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the
trier of fact. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). The jury is
the sole judge of the credibility of witnesses and the weight to be given to their testimony. Id. When
an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did
not have the burden of proof, the appellant must demonstrate the finding is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. See Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Similarly, when an appellant attacks the factual
sufficiency of an adverse finding on an issue on which he has the burden of proof, the appellant must
demonstrate on appeal that the adverse finding is so against the great weight and preponderance of
the evidence that it is clearly wrong and manifestly unjust. Dow, 46 S.W.3d at 242.

 Appellants contend that no evidence supports the jury's finding that Shrum's breach
was excused by their conduct. The jury found that Shrum breached his duties under the ICMA by
failing to handle the day-to-day management of onsite operations including scheduling and ordering
of materials. This finding is not challenged on appeal. The jury also found that at least one of the
following conditions existed that excused Shrum's breach of his contract: (1) appellants' conduct
that prevented or materially hindered his ability to fulfill the contract, (2) appellants' waiver, or
(3) appellants' previous failure to comply with a material obligation of the contract.

 Before reviewing the sufficiency of the evidence, we must know the elements against
which that evidence is measured. Appellants contend that Shrum, to prove his failure to perform
was excused, had to show that appellants prevented or materially hindered his performance and that
they did so wrongfully, citing S.K.Y. Inv. Corp. v. H. E. Butt Grocery Co., 440 S.W.2d 885, 889-90
(Tex. Civ. App.--Corpus Christi 1969, no writ). The question the jury was asked, however, did
not include the word "wrongful." The longstanding rule does not require that the prevention or
hindrance be wrongful to excuse performance, merely that it must prevent or materially hinder
performance. See Sanderson v. Sanderson, 109 S.W.2d 744, 749 (Tex. 1937). As the Fort Worth
court explained:


 The law is that if one party to a contract is prevented by the acts of the other party to
the contract from performing such contract, then the party so prevented from
performing is excused from further performance of the contract. His failure to
perform under those circumstances cannot be made the basis of an action for
damages for a breach of the contract. 

 

L. H. Land Painting Co. v. S & P Constr., Inc., 516 S.W.2d 14, 16 (Tex. Civ. App.--Fort Worth
1974, writ dism'd); see also Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.--Houston [1st Dist.]
2003, pet. denied) ("Prevention of performance by one party excuses performance by the other party,
both of conditions precedent to performance and of promise."); Atkinson Gas Co. v. Albrecht,
878 S.W.2d 236, 239 (Tex. App.--Corpus Christi 1994, writ denied). Accordingly, we will review
whether legally and factually sufficient evidence supported the jury's finding that appellants
prevented or materially hindered Shrum from fulfilling his duties under the contract without
factoring in the wrongfulness of appellants' conduct. (17)

 Shrum refers to key acts or omissions by appellants that prevented or materially
hindered him from fulfilling his duty to schedule subcontractors and order materials and ultimately
complete the project timely and professionally. There was evidence that appellants prepared
inadequate plans and their failure to timely pay for supplies and workers led to shortages of material
and labor. Shrum contends that the absence of detailed plans hindered his ability to timely and
professionally complete the house. Melton testified that the lack of plans often left the workers to
their own devices. David Shiflet described the plans as minimal, and testified that anyone building
this house without the assistance of a structural engineer would not be using good judgment. Loredo
Truss and DCI's structural engineer expert Gary Sweatt testified that he would expect that a
structural engineer would have been hired to create a structural framing plan for a building of this
expense, but none was. Civil engineer Michael Skoller, who disagreed with Melton's conclusions
and opined that hiring a structural engineer was the owner's responsibility, nevertheless testified that
the retrofitting of the roof alone would require multiple pages of plans. Parker testified that, despite
his expertise and experience, he could not have built the house from the plans provided.

 Shrum testified that he had difficulty getting materials because a number of DCI's
accounts were closed due to tardy payments. Shrum testified that, while he was a DCI employee,
Daneshjou asked him to watch the Bullocks' mailbox and intercept a notice of lien that was being
mailed there. Shrum said that a tile contractor refused to return to the jobsite because Daneshjou had
not paid him $1,900 for work done at Daneshjou's house and had accused him of stealing tile and
damaging carpet. Shrum testified that he anticipated a sheetrock shortage due to general demand,
but was not allowed by appellants to stockpile it. Shrum did not have the authority to hire and fire
subcontractors, and Shrum testified that appellants' refusal to timely pay some subcontractors caused
them to refuse to work or to assign insufficient staff to finish the job promptly. Shrum testified that
the accumulated lag from these practices left too much to do in the five months between when Shrum
became an independent contractor and the December 31, 1999 date targeted for completion. He said
that the work during that period should have been spread out over ten months or more, and that
the compression made the worksite chaotic and difficult to supervise. Shrum testified that, although
Daneshjou promised to pay subcontractors within a day of receiving their bills, he delivered on that
promise for only about a week. Shrum testified that, although some of the work was substandard,
the bigger problem with the project was that the work was not completed.

 Appellants presented evidence that the plans, supplies, and labor were sufficient and
that they were not the cause of Shrum's breach. Daneshjou testified that he needed fewer plans
because he was the designer and the builder, and Shrum agreed that was possible. Daneshjou also
testified that Sandra Bullock's schedule prevented him from consulting with her enough to make a
full set of plans before beginning construction. Terry Ortiz, an LOC engineer, testified that most
houses do not have engineered framing plans. Daneshjou testified that more drawings were made
onsite that were taken or destroyed without being put into evidence. Shrum also acknowledged that
a contractor could have valid reasons not to pay a subcontractor or supplier. Daneshjou's secretary,
Stephanie Montemayor, testified that coordinating bill approval with Sandra Bullock's travel
and work schedule delayed some payments. Appellants point to the flurry of activity during the last
five months of 1999--when Shrum testified that there were as many as 150 workers onsite--as
belying his testimony that appellants did not provide enough workers. Daneshjou testified that
the Bullocks were slow with some decisions and often late with payments, causing delays. DCI's
general manager Russell Gustafson testified that rains delayed framing about three to five weeks
and that preparing the house for a Bullock family wedding in April 1999 set the project back about
two weeks. There was testimony that completion of the house was also secondary to making the
house ready for a New Year's Eve party in December 1999. Appellants contend that Shrum failed
to show how any alleged payment issues prevented him from performing. Several witnesses opined
that an attentive superintendent should have caught many of the substandard aspects of the
construction and seen that they were corrected. Appellants also argue that Shrum failed to prove that
they breached the ICMA before he did.

 We conclude that legally and factually sufficient evidence supports the jury's finding
that Shrum's performance was excused because it was materially hindered or prevented by
appellants' conduct. Even if appellants' delayed payment of subcontractors and suppliers was
justified, appellants have not shown themselves entitled to relief on appeal. Under the question
submitted, Shrum did not have to prove that appellants breached the contract first or prevented his
performance--only that their actions materially hindered his performance. The evidence regarding
the inadequacy of the plans for a project of this complexity supports the jury's finding. The evidence
is also sufficient to allow the jury to find that delays in supplies and labor caused by appellants'
practices materially hindered Shrum's ability to schedule the work in a way that permitted timely and
professional completion of the house.

 This evidence also supports the jury's finding that Shrum has zero responsibility
for the Bullocks' damages. As appellants note, the court instructed the jury not to answer the
proportionate responsibility question with regard to Shrum based on their finding that Shrum's
failure to comply with the ICMA was excused. We have found the evidence legally and factually
sufficient to support the finding of excuse. Contrary to appellants' argument, we do not believe
that the mere fact that the jury filled in the blank for Shrum's percentage of responsibility with a "0"
is reversible error. It is at most harmless error because an empty blank has the same legal effect as
a zero. Any award of attorneys' fees to Shrum is based on the answers to the liability questions
between Shrum and appellants, not a redundant assessment that Shrum has no responsibility for the
Bullocks's damages. Although there was evidence supporting a finding that Shrum was responsible
for at least part of the Bullocks' damages, sufficient evidence supported the jury's finding that
excused his responsibility under the ICMA. We find no reversible error in the finding that Shrum
had zero proportionate responsibility for the Bullocks' damages.


 Award of attorneys' fees to Shrum against appellants

 Appellants contend that Shrum is not entitled to attorneys' fees as a matter of law. 
They assert that Shrum claimed entitlement to attorneys' fees based on his contract and under
the DTPA. Appellants contend that Shrum is not entitled to attorneys' fees under the contract
because the evidence conclusively shows that he was partly responsible for the damages to the
Bullocks. Appellants contend that Shrum is not entitled to attorneys' fees under the DTPA because
their claims had a "more than ample basis in law and fact."

 We conclude that the trial court properly awarded Shrum attorneys' fees against
DCI under the ICMA. Paragraph eight of the ICMA provides as follows:


 Should any litigation be commenced between the parties to this Agreement
concerning said business, this Agreement, or the rights and duties of any party in
relation hereto, said party prevailing in such litigation shall be entitled, in addition
to such other relief as may be granted, to a reasonable sum as and for attorney's fees
in such litigation which shall be determined by the Court in such litigation or in a
separate action brought for that purpose. (18)


DCI sued Shrum for breach of contract, among other causes of action. Although the jury found that
Shrum breached his duty under the ICMA to handle the day-to-day management of onsite operations
at the house, the jury also found that his failure to comply was excused and that he bore no
responsibility for the Bullocks' damages. DCI, by contrast, was held responsible for 80% of the
Bullocks' damages. DCI plainly sued Shrum concerning the ICMA and their rights and duties in
relation to it, and Shrum was found not liable to DCI. The court did not err by deeming Shrum the
prevailing party in litigation between the parties concerning their duties under the ICMA and
awarding attorneys' fees against DCI accordingly. Having found Shrum eligible for attorneys' fees
as a prevailing party in a suit concerning rights and duties under the ICMA, we need not explore
whether Shrum is entitled to attorneys' fees from DCI under the DTPA.

 We conclude, however, that the trial court erred by awarding attorneys' fees to Shrum
from Daneshjou, individually. Shrum was not entitled to attorneys' fees from Daneshjou based on
any provision of the ICMA because it was an agreement between Shrum and DCI--not Daneshjou. (19) 
Shrum cannot claim attorneys' fees from Daneshjou under the DTPA based either on appellants'
claims for violations or for indemnity under the DTPA. Section 17.50 expressly authorizes awards
of attorneys' fees only "[o]n a finding by the court that an action under this section was groundless
in fact or law or brought in bad faith . . . ." Tex. Bus. & Com. Code Ann. § 17.50(c) (West Supp.
2008). There is no showing, however, that Daneshjou, individually, sought recovery under
section 17.50 for violations by Shrum. (20) Daneshjou did request indemnity under the DTPA for any
liability he had to the Bullocks. See Tex. Bus. & Com. Code Ann. § 17.555 (West 2002). However,
section 17.555 does not authorize an award of attorneys' fees and does not entitle a litigant to
attorneys' fees under section 17.50. Shrum, therefore, is not entitled to an attorneys' fees award
against Daneshjou, individually. We conclude that the award of attorneys' fees to Shrum against
Daneshjou was error as a matter of law.


Judgment against King's Contracting, Sandoval, and Montiel

 Appellants contend that the trial court erred by failing to enter a judgment
notwithstanding the jury's verdict assessing only a 1% share of proportionate responsibility
each against King's Contracting, Montiel, and Sandoval. A judgment notwithstanding the verdict is
authorized only when a directed verdict would have been proper. Carr v. Austin Forty, 744 S.W.2d
267, 273 (Tex. App.--Austin 1987, writ denied). Appellants also contend that this part of the
judgment is supported by no or factually insufficient evidence, or is against the great weight and
preponderance of the evidence. Appellants assert that "these three subcontractors performed a
substantial amount of the work that was allegedly deficient; thus, their share of responsibility should
be greater than 1% each." Appellants assert that the work performed by these three subcontractors
is in "the ballpark of $4 million."

 The jury found that these three subcontractors breached a warranty and their
contract with DCI and were each responsible for 1% of the damages to the Bullocks. (21) The jury also
found that DCI's total actual cost of construction was $4,072,919. This unchallenged finding is
incompatible with appellants' assertion on appeal that the work of these three subcontractors was
alone in the ballpark of $4 million. Evidence showed that King was the primary framer of the roof
and that Sandoval installed the flat roof and the clay tile. Montiel installed masonry. There was no
claim that any of these three subcontractors was responsible for the decisions underlying the billing
disputes or the landscaping. (22)

 The roof was undisputedly complex, with many angles, features, and types of roofing. 
There was expert testimony that the complexity of the design, coupled with the failure of the
designer (Daneshjou) to produce detailed plans, doomed the roof to progressive collapse. Melton
testified that he could not imagine how a framer could build the roof without a roof framing plan. 
Parker, appellants' expert who rejected Melton's theory of progressive collapse, nevertheless 
testified that he could not have built the house from the plans provided. Mark McGivern, one of the
Bullocks' experts, testified that he was "critical of" King (as well as Shrum and the inspectors) and
stated that a framer should have knowledge of how to build the building according to proper design. 
McGivern said it was the worst-built attic he had ever seen. He and Skoller agreed that there was
improper nailing. McGivern found gaps in the framing, but Skoller testified that these were due to
bad cuts rather than movement. Melton testified that the roof was in progressive collapse and at risk
of sudden collapse, but Parker and Skoller rejected that assessment, with Parker noting the absence
of collapse in the four years before trial. There was testimony that deficiencies in the flat roofing,
adaptations and breaking of the clay tiles, and inadequacies in the flashing caused most of the leaks. 
There was also testimony that the deficiencies were easily remediable, the adaptation of the clay tiles
was not a widespread problem, that some tiles were broken by subsequent visitors to the roof, that
the broken tiles and incorrect flashing could be repaired, and that most of the leaks had been stopped. 
McGivern, however, testified that the roof could move and cause new leaks to appear.

 The masonry was also damaged by water. Clarke Griffith, forensic architect, found
tears in the water-resistant barrier, an absence of airspace between mortar and stone and the
underlayment, and gaps in mortar. He found an absence of weepholes causing ponding and rot of
the underlayment. He concluded that the 30-foot veneer chimney was a code violation. McGivern
described the masonry as a mess. Melton and Parker agreed that all the stone would have to be
removed. Daneshjou testified that removing stones might have led to rips in the underlayment.

 The jury is given wide latitude in performing its sworn duty to serve as fact-finder
in allocating responsibility. See Rosell v. Central W. Motor Stages, Inc., 89 S.W.3d 643, 659
(Tex. App.--Dallas 2002, no pet.). Even if the evidence could support a different percentage
allocation of responsibility, we may not substitute our judgment for that of the jury. See id.; see also
Samco Props., Inc. v. Cheatham, 977 S.W.2d 469, 478 (Tex. App.--Houston [14th Dist.] 1998, pet.
denied).

 While there is clear evidence of substandard construction, there is ample evidence
to support the view that the roof problems were inescapably rooted in deficient or inadequate design. 
There is clear evidence of problems with the masonry, but there is also evidence of inadequate
design (as in the intersections of roofing and masonry). There is also evidence supporting findings of
damages in other aspects of the project that the jury considered when apportioning responsibility
such as the boathouse, the guesthouse, the retaining wall, the gate, and others. The evidence
supports the verdict, and the trial court did not err by denying the motion for judgment
notwithstanding the verdict with respect to the jury's assignment of 1% responsibility each to King,
Sandoval, and Montiel.


Assessment of zero responsibility for other subcontractors

 Appellants contend that the trial court erred by determining that Loma, Hood,
Hernandez, LOC, and Austin Fine Floors were responsible for no damages. (23) The jury made
the finding in response to the proportionate responsibility question, and the trial court refused to
disturb that finding by either granting judgment notwithstanding the verdict or a new trial. 
Appellants contend that the evidence shows that these subcontractors "performed sufficient work
on the project to bear some of the responsibility." Loma did the rough grading for the landscaping,
Hood installed electric wiring, Hernandez did masonry work, LOC performed inspections of some
of the work including framing, and Austin Fine Floors did tiling and other flooring installation. 
Appellants do not cite any evidence to support their assertion that the evidence compels a finding
that these appellees were more than zero percent responsible for the Bullocks' damages. That is
sufficient grounds to reject this issue entirely. See Tex. R. App. P. 38.1(i); Telecheck Servs., Inc.
v. Elkins, 226 S.W.3d 731, 737 (Tex. App.--Dallas 2007, no pet.); Waldrep v. Texas Employers Ins.
Ass'n, 21 S.W.3d 692, 707 (Tex. App.--Austin 2000, pet. denied). Their argument is a more
general, impassioned plea that justice demands that someone other than the architect and builder
must share in the 97% responsibility assigned to them.

 There is scant if any evidence directly linking these subcontractors to substandard
work. Where there is some evidence that the general type of work performed was substandard, there
is evidence casting doubt on whether the work was the source of damages to the Bullocks. More
critically, there is little if any evidence linking these particular subcontractors to deficient work. We
have reviewed the record and conclude that the evidence is legally and factually sufficient to support
the jury's verdict assessing a zero percent share of responsibility to Loma, (24) Hood, Hernandez, LOC,
and Austin Fine Floors.

 Neither the arguments appellants raise in their brief nor our review of the record
persuades us that either the jury's assignment of zero percent responsibility to these subcontractors,
or the trial court's refusal to grant judgment notwithstanding that verdict, constitutes reversible error.


Conclusion


 We conclude that the trial court erred by assessing attorneys' fees for Shrum against
Daneshjou individually. Accordingly, we reverse the judgment in that regard and render judgment
that Shrum take nothing on his claim for attorneys' fees against Daneshjou, individually. We affirm
the judgment of the district court in all other respects.



 

 G. Alan Waldrop, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed: March 27, 2009
1. To provide some context for the remaining findings, we will briefly recount some of the
jury's findings regarding claims between the Bullocks and appellants. The jury found that appellants
committed fraud against the Bullocks, engaged in false, misleading, or deceptive acts or practices
that were producing causes of the Bullocks' damages, and engaged in an unconscionable action
or course of actions that damaged the Bullocks. The jury also found that Daneshjou made a
negligent misrepresentation on which the Bullocks justifiably relied. The jury awarded $2,145,000
in damages related to repair, demolition, and reconstruction of the house, as well as $400,000 for
maintenance and loss of use through trial. The jury awarded $1,947,875 in actual damages from
various overcharges. The jury also awarded a total of $1,402,125 in exemplary damages against
appellants and awarded the Bullocks $1,184,332.19 in attorneys' fees.
2. Claims for which a specific judgment or dismissal is missing can ultimately be considered
resolved against appellants as a result of the clause in the judgment denying all relief not expressly
granted. The judgment expresses the intent that the judgment finally dispose of all parties and issues
not disposed of otherwise. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 204 (Tex. 2001).

3. We have affirmed the judgment regarding the claims against Loma in a separate appeal. 
See Daneshjou Co. v. Loma Excavation, Inc., No. 03-04-00738-CV, 2008 Tex. App. LEXIS 6036,
at *19-24 (Tex. App.--Austin Aug. 8, 2008, pet. denied) (mem. op.). We do not know the status
of the claims against LOC, except that they were severed from the claims in this case and there was
some conversation on the record at this trial of holding a separate trial. However, appellants and
LOC in their briefs describe LOC as a settling party.
4. Although the Amended Scheduling Order is not part of the record in this appeal, the
docket sheet in this case contains an entry consistent with the order being signed on November 23,
2003, and filed on November 25, 2003.
5. It is not clear that appellants intend to challenge the judgment as to all seven appellees. In
the first sentence of the paragraph ending the summary judgment discussion--just after discussing
evidence against Loma and Perfect Lawns and asserting that they presented evidence against
five other appellees--appellants state, "Thus, Appellants presented to the lower court more than
sufficient evidence to refute the claims of 'no-evidence' relative to the work of the three movants."
6. "The brief must contain a clear and concise argument for the contentions made,
with appropriate citations to authorities and to the record." Tex. R. App. P. 38.6(i) (emphasis
added). Appellants assert that their replies to the summary judgment motions were not filed by the
trial court. As discussed above, those gaps in the record are construed against them on appeal. See
Tex. R. App. P. 33.1, 34.5(a); Enterprise Leasing Co. v. Barrios, 156 S.W.3d 547, 549 (Tex. 2004).


 Application of rule 38.6(i) requires affirmance of the judgment favoring Trim Ron, who is
listed as an appellee but not otherwise mentioned in appellants' brief except in a quote from the
judgment.
7. Perfect Lawns contends that appellants' settlement with the Bullocks bars all of appellants'
claims. Although appellants initially described their claims against the third parties as a breach
of contract claim and derivative claims (for contribution or indemnity) for the remainder of the
causes of action brought by the Bullocks against appellants, in their motion for reconsideration of
the partial granting of the motions for summary judgment, appellants recharacterized their non-contract complaints as including both derivative and direct claims. Read broadly, appellants'
petition supports the latter characterization, which means that their claims theoretically survive
the preclusive effect that settlement of one's own liability has on claims for contribution. See
Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19, 22 (Tex. 1987); Filter Fab, Inc. v. Delauder,
2 S.W.3d 614, 617 (Tex. App.--Houston [14th Dist.] 1999, no pet.).
8. Appellants also complain about the exclusion of evidence of indemnity agreements relating
to Loma. Loma was severed from this case below, the rejection of the indemnity claim against Loma
has been affirmed, and the petition for review denied. Daneshjou, 2008 Tex. App. LEXIS 6036,
at *30-35.
9. As reproduced in the documents in the record, the indemnity language, along with the rest
of the paragraph, appears to be in six-point type.
10. With respect to claims for contribution, any error in granting summary judgment on or
dismissal of the contribution claims was waived or rendered harmless when appellants settled their
claims with the Bullocks. See Daneshjou, 2008 Tex. App. LEXIS 6036, at *28-30; see also Jinkins,
739 S.W.2d at 22; Filter Fab, 2 S.W.3d at 617.
11. The fact that the three subcontractors found responsible for 3% of the Bullocks' damages
did not appear at trial blunts the argument that the jury would blame the parties at trial to the
exclusion of others.
12. The proportionate responsibility statute does not apply to contract claims. See Doncaster
v. Hernaiz, 161 S.W.3d 594, 604 (Tex. App.--San Antonio 2005, no pet.).
13. As we will discuss next, appellants could have requested that the court ask the jury
a question regarding the allocation of a portion of the responsibility to any settling person. See
Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)(3) (West 2008).
14. There is a distinction between permitting the determination of the proportionate
responsibility of a settling party and prohibiting a plaintiff from obtaining contribution from a
settling party. Compare Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)(3), with id. § 33.015
(West 2008). Both are consistent with seeking to have parties pay the share of damages for which
they are responsible while encouraging settlement. Permitting a jury to consider the proportionate
responsibility of settling parties along with that of non-settling parties permits a more accurate
assessment of responsibility and liability and avoids automatically holding a defendant responsible
and liable for all of a plaintiff's damages because it is the last non-settling defendant. The
prohibition of obtaining contribution from settling defendants encourages settlement by allowing a
settling defendant to fix his liability. A defendant would have little incentive to settle its liability if
it could later be required to contribute to payment of a damage award assessed against another party. 
15. We concluded in the previous appeals that any error in dismissing appellants' contribution
claims against parties who settled with appellees was waived or rendered harmless by appellants'
settlement with the Bullocks. Daneshjou, 2008 Tex. App. LEXIS 6036, at *28-30. Because a
party can settle only its proportionate share of responsibility, a settling party has no right to obtain
contribution to the settlement from other alleged tortfeasors. Jinkins, 739 S.W.2d at 22; Filter Fab,
2 S.W.3d at 617. Having settled their own liability with the Bullocks, appellants have waived their
asserted entitlement to contribution from other parties. There is no basis in the record on which to
reverse the dismissal of appellants' contribution claims against subcontractors for what is now, as
a matter of law, appellants' liability. Jinkins, 739 S.W.2d at 22.
16. Appellants assert that the trial court refused to submit a question regarding the negligence
of the subcontractors to the jury. They do so, however, in the context of their claim for contribution. 
Because there is no error in the trial court's rejection of the contribution claim, appellants have
presented no reversible error concerning the negligence issue.
17. Appellants have not preserved or presented a complaint about the absence of
"wrongfulness" from the jury charge, and cannot use a sufficiency challenge as an end-run around
the preservation requirement. Even if the law required wrongfulness, the jury charge submitted
without objection to the absence of the wrongfulness element provides the elements of the cause of
action against which we must assess the evidence. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711,
715 (Tex. 2001).
18. Attorneys' fees are available under paragraph eight independent of any right to indemnity
under paragraph three of the agreement, which, as DCI argues, allows Shrum to recover only if the
damages are "caused without any fault[] of Shrum."
19. There is no finding by the jury or the court supporting a piercing of the corporate veil to
award Shrum attorneys' fees against Daneshjou individually.
20. Shrum relies on the following language from appellants' amended complaint to show that
Daneshjou, individually, made claims for violations of the DTPA:


 All of the misconduct described herein by the Bullocks and Shrum is the producing
and proximate cause of damages to DCI and Daneshjou . . . .



This text is a statement summarizing several pages of allegations concerning many causes of action.
Shrum acknowledges, however, that appellants earlier specifically asserted only that DCI was a
consumer--a requirement to make claims under the DTPA. See Tex. Bus. & Com. Code Ann.
§ 17.50 (West Supp. 2008). We conclude that this excerpt did not mean that all of the misconduct
produced damages to both DCI and Daneshjou, implicitly inserting an allegation that Daneshjou is
a consumer who requests damages under every theory DCI asserted.
21. We note that the jury awarded damages to the Bullocks based on fraud, DTPA violations,
and breach of fiduciary duty--actions which none of the three subcontractors were found to have
committed.
22. Appellants repeatedly urge that the jury unfairly held them responsible for almost all of
the $7 million damage verdict and that the subcontractors should bear a larger share of the burden. 
Appellants fail to mention that $3.35 million of the damage award is for actual and exemplary
damages related to overbilling--causes of action for which the subcontractors were not alleged to
be responsible. Another $1,184,332.19 of the award is for attorneys' fees. The subcontractors'
proportionate responsibility was computed based on the $2,145,000 award for repairs, demolition,
and reconstruction.
23. These are the subcontractors whose share of the responsibility was determined by the jury. 
We have previously addressed in this opinion appellants' complaints about subcontractors whose
share of the responsibility was not submitted to the jury.
24. As noted above, Loma was granted take nothing, no evidence summary judgment on the
merits of appellants' direct claims for damages by Loma. Daneshjou, 2008 Tex. App. LEXIS 6036,
at *19-24. There is no reversible error in the jury's finding of zero responsibility for a party that had
been granted a take nothing summary judgment on the merits before trial.