**ROCKY MOUNTAIN HELICOPTERS, INC., Petitioner,**

v.

**LUBBOCK COUNTY HOSPITAL DISTRICT, d/b/a University Medical Center, Respondent**

No. 97–1205.

Supreme Court of Texas.

Argued Oct. 21, 1998.

Decided Dec. 31, 1998.

John M. Weaver, Dan K. Horn, Michael H. Hull, Irving, for Petitioner.

John David Rosentreter, G. Douglas Welch, Lubbock, for Respondent.

SPECTOR, Justice.

The principal question before us is whether legally sufficient evidence supports a jury's finding that Rocky Mountain Helicopters, Inc. violated the Deceptive Trade Practices–Consumer Protection Act. The court of appeals answered that question affirmatively. —— S.W.2d ——, 1997 WL 527371. We hold that there is no evidence that Rocky Mountain violated the DTPA. Accordingly, we reverse the judgment of the court of appeals. We remand to that court to allow it to consider points it did not previously reach.

In 1989, Lubbock County Hospital District d/b/a University Medical Center (UMC) and Lubbock Methodist Hospital established a program known as CareLink to provide emergency patient transport. The two hospitals entered into a contract with Rocky Mountain that called for the company to furnish operational and technical support, maintenance, pilots, and mechanics for two helicopters. CareLink was to supply the helicopters, a helipad, communications, fuel, medical personnel, equipment, supplies, and accommodations for the helicopter crews. The helipad, a helicopter refueler, and an underground jet fuel storage tank were located on UMC's property. However, it is undisputed that Rocky Mountain was solely responsible for conducting helicopter refueling operations.

The afternoon of June 21, 1990, Rocky Mountain performed a "hot" refueling of a CareLink helicopter at the UMC helipad.[1] Tom Kitterman, a Rocky Mountain mechanic with more than twenty-eight years' experience, performed the refueling. Kitterman had never used the UMC refueler before, and had received, at most, ten minutes of training in its use. There is some evidence that Kitterman failed to turn off the refueler after he finished refueling the helicopter.

More than nine hours later, the second CareLink helicopter flew to the UMC helipad to refuel. On approaching the helipad, the aircraft's crew noticed a strong odor of fuel and saw a significant quantity of fuel on the ground. After landing, the helicopter's crew activated an emergency cut-off switch that shut down the refueling apparatus's pump. By that time, about 1,000 gallons of fuel had spilled from the refueler onto UMC's property. UMC ultimately was required to remove and incinerate contaminated soil and to install wells to monitor the contamination of shallow groundwater. There was evidence that the total cost of cleaning up the site will reach more than $300,000.

As a result of the fuel spill, UMC sued Rocky Mountain; Semler Industries, Inc., the refueler's manufacturer; BGR Architects & Engineers, the helipad's architect; and White's Pumps Services & Supply, Inc., which had installed and serviced the refueler. UMC asserted claims for negligence and DTPA violations. UMC settled before trial with all the defendants except Rocky Mountain for a total of $180,000. The jury found that Rocky Mountain's negligence, along with that of UMC and White's Pumps Services, proximately caused the fuel spill. The jury attributed forty percent of the negligence to Rocky Mountain, forty percent to White's, and twenty percent to UMC.

The court's charge also asked the jury to determine whether Rocky Mountain had engaged in a false, misleading, or deceptive act or practice that was a producing cause of damages to UMC. The court's charge defined

1. In a hot refueling, the helicopter's engines are left running during the refueling.

"false, misleading, or deceptive act or practice" as

> Representing that goods or services had or would have characteristics that they did not have; or
>
> Representing that goods or services are or will be of a particular quality if they were of another; or
>
> Representing that an agreement confers or involves rights that it did not have or involve; or
>
> Failing to perform services in a good and workmanlike manner.

The jury found that Rocky Mountain had engaged in a false, misleading, or deceptive act or practice, although it failed to find that Rocky Mountain knowingly violated the DTPA. The jury further found that UMC had incurred past and future damages of $383,272.19. The trial court rendered judgment for UMC for $486,235.59, which included attorneys' fees and prejudgment interest.[2]

On appeal, Rocky Mountain contended, among other things, that no evidence supported the jury's finding that Rocky Mountain had violated the DTPA. Rocky Mountain argued that the requirements for the extension of an implied warranty of good and workmanlike performance of services were not present. The court of appeals held that Rocky Mountain had waived this contention because it was "never raised before the trial court in a timely request, objection or motion." —— S.W.2d at —— . The court further held that some evidence supported the finding that Rocky Mountain had failed to perform services in a good and workmanlike manner. On rehearing, the court reiterated its conclusion that Rocky Mountain had not preserved its contention that no warranty arose under these circumstances. *Id.* It then observed that, "[a]ssuming *arguendo*, that Rocky Mountain had properly preserved error on this issue, we would nonetheless conclude that the trial court did not err in finding that an implied warranty of good and workmanlike services existed under the facts of this case." —— S.W.2d at —— .

■ Before this Court, Rocky Mountain maintains that the court of appeals erred in holding that it waived its contention that no implied warranty arose in this case. Rocky Mountain asserted in its motion to disregard jury findings that no evidence supported the jury's DTPA finding. Rocky Mountain argues that this sufficed to preserve its argument that no implied warranty arose under the facts of this case. We agree.

The court of appeals erred in holding that the no-evidence point in Rocky Mountain's motion to disregard jury findings did not preserve the contention that no implied warranty arose under the circumstances of this case. Rocky Mountain's complaint on appeal is that no evidence supports the finding that it violated the DTPA. That complaint encompasses the contention that no implied warranty arose under the present facts because, if no implied warranty arose, then evidence that Rocky Mountain failed to perform in a good and workmanlike manner is no evidence that Rocky Mountain committed a deceptive trade practice. *See Edward D. Jones & Co. v. Fletcher,* 975 S.W.2d 539, 543–45 (Tex. 1998). In other words, any evidence that Rocky Mountain failed to perform in a good and workmanlike manner is "no evidence of legally prohibited conduct to support the jury's liability finding." *Id.* at 543. We hold that Rocky Mountain preserved its argument that no implied warranty arose in the circumstances before us.

■ Accordingly, we consider the viability of UMC's claim that Rocky Mountain breached an implied warranty to perform services incidental to helicopter maintenance in a good and workmanlike manner. "[I]mplied warranties are created by operation of law and are grounded more in tort than in contract." *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex. 1984). Implied warranties may be imposed either by statute or under the common law. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 438 (Tex.1995). To date, this Court has recognized an implied warranty for services only when the services relate to the repair or

---

2. Although the trial court did not specify whether its judgment was based upon the DTPA or the negligence finding, we assume that the court rendered judgment under the DTPA, since the judgment included attorneys' fees and did not account for UMC's contributory negligence.

modification of existing tangible goods or property. *See Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 354 (Tex.1987).

■ An implied warranty that services will be performed in a good and workmanlike manner may arise under the common law when public policy mandates. *Id.; Dennis v. Allison,* 698 S.W.2d 94, 95 (Tex.1985). Public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need. *See Parkway,* 901 S.W.2d at 440; *Dennis v. Allison,* 698 S.W.2d at 96. There is no compelling need for an implied warranty when other adequate remedies are available to the consumer. *See Parkway,* 901 S.W.2d at 440; *Dennis v. Allison,* 698 S.W.2d at 97.

■ Remedies may not be adequate when, for example, privity or reliance requirements or the difficulty of assigning responsibility prevent a wronged consumer from obtaining redress. *Cf. Jacob E. Decker & Sons v. Capps,* 139 Tex. 609, 164 S.W.2d 828, 833–34 (Tex.1942) (imposing common-law implied warranty that food products introduced into the chain of commerce are fit for human consumption). No such obstacles are present under the circumstances of this case. In fact, UMC actually obtained a negligence finding against Rocky Mountain, and breach of contract remedies were conceivably available as well.

We therefore hold that Texas law does not recognize an implied warranty that services incidental to helicopter maintenance will be performed in a good and workmanlike manner. Accordingly, the jury's finding that Rocky Mountain committed a deceptive trade practice cannot be sustained under a breach of warranty theory.

■ UMC argues, however, that we can sustain the DTPA finding because there is some evidence that Rocky Mountain misrepresented the characteristics of the services it agreed to perform or the rights conferred under its agreement with CareLink. UMC argues first, that legally sufficient evidence supports the finding because Rocky Mountain did not comply with a provision of the CareLink contract in which Rocky Mountain agreed

to save, indemnify, and hold CareLink harmless from all claims, demands, and causes of action of every kind and character arising in favor of employees of RMH, employees of CareLink, or third persons on account of personal injury or property damage resulting from the willful or negligent acts of RMH, its agents, employees, or subcontracts, in connection with the performance of its obligations outlined herein.

We disagree that Rocky Mountain's failure to indemnify UMC can support the jury's DTPA finding. Assuming that Rocky Mountain was contractually obligated to indemnify UMC under the facts of this case, its failure to perform that obligation was no more than a breach of contract. We have repeatedly held that a mere breach of contract, without more, is not a DTPA violation. *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14–15 (Tex. 1996); *La Sara Grain Co.,* 673 S.W.2d at 565; *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.,* 661 S.W.2d 933, 935 (Tex. 1983).

■ Alternatively, UMC relies on a part of Rocky Mountain's written training policy that provides:

All persons involved in hot refueling must be trained in the procedures, safety precautions, emergency procedures dealing with possible fire danger, use of fire extinguishers, first aid procedures for fuel exposure to skin and clothing, emergency shut down of the aircraft, grounding requirements, and identification of ignition sources. Training must be documented and recurrent training conducted annually.

We agree that there is some evidence that Rocky Mountain failed to abide by this policy. There is evidence that Kitterman had received only minimal training on the refueler at UMC's facility, and that Rocky Mountain did not document the training. But the record contains no evidence that UMC was aware of the training policy or that Rocky Mountain had communicated its content or existence to anyone outside of the company. It is, therefore, no evidence of a misrepresentation that was a producing cause of damages to UMC. *Cf. Amstadt v. U.S. Brass Corp.,*

919 S.W.2d 644, 649 (Tex.1996) (holding that the DTPA does not reach upstream manufacturers and suppliers when their misrepresentations are not communicated to the consumer).

In summary, we hold that Rocky Mountain preserved its contention that no implied warranty arose under the circumstances of this case. We further hold that the evidence is legally insufficient to support the jury's finding that Rocky Mountain committed a deceptive act or practice that was a producing cause of damage to UMC. We therefore reverse the judgment of the court of appeals. Because Rocky Mountain raised points challenging the sufficiency of the evidence to support the jury's negligence finding that the court of appeals did not reach, we remand to that court for further proceedings.