TRANS–GULF CORPORATION, Appellant,

v.

PERFORMANCE AIRCRAFT SERVICES, INC. and Associated Air Center, Inc., Appellees.

No. 11–01–00279–CV.

Court of Appeals of Texas, Eastland.

June 20, 2002.

George McCall, Kern & Wooley, Irving, Amanda Stamps Lewis, Strasburger & Price, Colin Cahoon, Vincent Allen, Carstens, Yee & Cahoon, Dallas, for appellant.

William Mahoney, Kern & Wooley, Irving, Christine Roseveare, Paul Myers, Strasburger & Price, Dallas, for appellees.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

W.G. ARNOT, III, Chief Justice.

Trans–Gulf Corporation (Trans–Gulf) filed suit against Performance Aircraft Services, Inc. (Performance) and Associated Air Center, Inc. (Associated) alleging deficiencies in the repair work they performed on the fuel tanks of a Boeing 727 aircraft which Trans–Gulf had recently purchased. The previous owner of the aircraft, Kingdom Holding Company (Kingdom), hired Associated in November of 1998 to perform repair work on the aircraft. Associated subcontracted with Performance to do the repairs on the aircraft's fuel tanks. The repairs were performed for Kingdom pursuant to a written contract with Associated wherein Associated disclaimed any express warranty for the removal, overhaul, repair, and/or installation of the aircraft's fuel tanks. The written contract additionally disclaimed any implied warranties regarding the repair work. Trans–Gulf purchased the aircraft from Kingdom on an "as is" basis in August of 1999 subject to a right of inspection.

Trans–Gulf contends that Performance and Associated used the wrong type of sealant on the fuel tanks. There is no allegation that the fuel tanks ever leaked or caused any injury to a person or property. Trans–Gulf only seeks to be reimbursed for the cost of replacing the sealant in the fuel tanks as well as incidental costs associated with the replacement process. Trans Gulf asserted claims based on negligence, negligence per se, negligent misrepresentation, and breach of implied warranty. The trial court granted summary judgment in favor of Performance and Associated on all claims asserted by Trans–Gulf. We affirm.

■ The comprehensive motions for summary judgment filed by Performance and Associated intermixed grounds for traditional summary judgment under TEX. R.CIV.P. 166a(c) with "no-evidence" summary judgment grounds under TEX.

R.CIV.P. 166a(i). As we noted in *Kelly v. LIN Television of Texas, L.P.*, 27 S.W.3d 564, 568 (Tex.App.-Eastland 2000, pet'n den'd), the better practice is to file separate motions relating to the conceptually distinct Rule 166a(c) and Rule 166a(i) summary judgments. Under a motion for a "no-evidence" summary judgment, we review only the evidence presented by the non-movant. Rule 166a(i). Analysis is made more difficult when it appears that the movant may be relying on his or her summary judgment evidence yet is asserting that there is no evidence on a particular element of the non-movant's case.

A trial court must grant a motion for a traditional summary judgment if the moving party establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). A trial court properly grants summary judgment in favor of a defendant if the defendant conclusively establishes all elements of an affirmative defense or conclusively negates at least one element of the plaintiff's claim. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). When reviewing a traditional summary judgment, we take as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell*, supra; *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

We review evidence presented by the non-movant in reply to a motion for a no-evidence summary judgment just as we review evidence offered in support of, and in response to a motion for, a traditional summary judgment: we accept as true evidence favorable to the non-movant and indulge every reasonable inference and re-

solve all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614 (Tex.App.-Eastland 2000, pet'n den'd); see *American Tobacco Company, Inc. v. Grinnell*, supra at 425. We review, however, only evidence presented by the non-movant. Rule 166a(i); *Hight v. Dublin Veterinary Clinic*, supra. If the non-movant presents evidence that is more than a mere scintilla, a no-evidence summary judgment is improper. *Hight v. Dublin Veterinary Clinic*, supra; *Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294, 298 (Tex.App.-Eastland 1999, no pet'n); cf. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. den'd*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

We first address the trial court's granting of summary judgment dismissing Trans–Gulf's negligence and negligence per se claims. Performance and Associated asserted that Trans–Gulf's claims for negligence and negligence per se are barred under the economic loss rule. We agree.

Without duty, there is no liability in negligence. See *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999). Furthermore, the existence of a legally cognizable duty is a prerequisite to a finding of negligence per se. *Perry v. S.N.*, 973 S.W.2d 301, 304 (Tex.1998). As stated by the Texas Supreme Court in *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986), "[T]he nature of the injury most often determines which duty or duties are breached." The economic loss rule is a rule of "duty" which focuses on the nature of the loss claimed in order to determine the duty in tort owed by the alleged tortfeasor. See William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 TEX. TECH L. REV. 477 (1992).

The 14th Court of Appeals has addressed the economic loss rule in a series of recent cases, the most recent of which is *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282 (Tex. App.-Houston [14th Dist.] 2000, no pet'n). Coastal Conduit & Ditching, Inc. (Coastal Conduit) was engaged in the business of excavating trenches and ditches. Noram Energy Corp. d/b/a Entex (Entex) operated gas lines in the general area in which Coastal Conduit performed excavating services. Coastal Conduit alleged that Entex was dilatory and careless in locating and marking its gas lines as required by law in areas where Coastal Conduit intended to excavate. Coastal Conduit asserted that it incurred additional expenses in performing its work because of the deficiencies of Entex's identification and marking. Coastal Conduit sought to recover these additional expenses from Entex under a negligence theory. Entex argued that the economic loss rule barred Coastal Conduit's negligence claim because Coastal Conduit was only seeking to recover economic losses.

The court began its analysis by noting that the economic loss rule has previously been applied in two instances to bar negligence claims: (1) the recovery of economic losses in negligence when the loss is the subject matter of a contract and (2) the recovery of economic losses in negligence against the manufacturer or seller of a defective product where the defect results in damage only to the product and not to a person or to other property. The court was, therefore, faced with the question of determining whether Texas law precludes the recovery of economic damages in a negligence case where the parties are contractual strangers and there is no accompanying claim for damages to a person or property. The court held that the economic loss rule barred Coastal Conduit's negligence action. Citing *Local Joint Executive Bd. v. Stern*, 98 Nev. 409, 651 P.2d 637 (1982), the court reasoned that permitting a tort recovery for purely economic loss would be a duty standard that sweeps too broadly.

*Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103 (Tex.App.-Houston [14th Dist.] 2000, no pet'n), also involved facts similar to this case. Hou–Tex, Inc. (Hou–Tex) is an oil and gas company which contracted with Saguaro Seismic Surveys, L.C. (Saguaro), a geological contractor, to assist it in selecting a site for a well to be drilled. Saguaro used computer software developed by Landmark Graphics (Landmark) to interpret seismic data in order to select a location for the new well. Unbeknownst to Saguaro, Landmark's computer program had a "bug." This bug caused the well to be drilled in an incorrect location resulting in a dry hole. Hou–Tex sued Landmark on a negligence theory seeking to recover its costs for drilling the dry hole. The court held that Landmark did not owe a duty to Hou–Tex under the economic loss rule because Hou–Tex only suffered economic damages. The court reasoned that permitting Hou–Tex to sue Landmark for economic losses would disrupt the risk allocations worked out in Hou–Tex's contract with Saguaro and Saguaro's contract with Landmark.

■ The nature of the relationship between the parties and damages sought in *Coastal Conduit* and *Hou–Tex* are analogous to this case. Performance and Associated are contractual strangers with Trans–Gulf. Furthermore, Trans–Gulf only seeks to recover economic damages. We agree with the holdings of *Coastal Conduit, Hou–Tex*, and the majority of other courts which have considered this issue. Simply stated, a duty in tort does not lie under the economic loss rule when the only injury claimed is one for economic damages.

■ We next address Trans–Gulf's negligent misrepresentation claim.

Trans–Gulf asserts that Performance and Associated made entries into the aircraft's maintenance records which constituted representations to the aircraft's future owners that Performance and Associated correctly performed their repair work to the plane's fuel tanks. Trans–Gulf further contends that it relied on these representations to its detriment in making the decision to purchase the aircraft. The elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Association of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991); Restatement (Second) of Torts § 552(1) (1977).

■ Performance and Associated contend that Trans–Gulf is not a party entitled to assert a claim for negligent misrepresentation with respect to the misrepresentations which were purportedly made. As noted in *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex.1999), the class of claimants who can assert a negligent misrepresentation claim is limited. Under Restatement (Second) of Torts § 552(2) (1977), liability is limited to loss suffered:

> (a) by the person or one of a limited group of persons for whose benefit and guidance [one] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [one] intends the information to influence or knows that the recipient so in-

tends or in a substantially similar transaction.

In interpreting Section 552(2), the court in *McCamish* stated that a negligent misrepresentation cause of action is available only when information is transferred to a known party for a known purpose.

The record establishes that Performance's and Associated's work on the fuel tanks took place prior to Trans Gulf's purchase of the aircraft. There is no evidence that Trans–Gulf was a party known by Performance and Associated at the time the repair work was performed or that Performance and Associated knew the information would be subsequently supplied to Trans–Gulf. While one might argue that Performance and Associated should have assumed that a subsequent owner of the aircraft might rely on their repair records, the Restatement requires actual knowledge of the recipient's identity and a specific intent on the part of the alleged tortfeasor that the claimant would rely on the misrepresentation. We, therefore, agree with Performance's and Associated's contentions that Trans–Gulf is not within the limited group of persons who can assert a claim for negligent misrepresentation.

■ Finally, we consider Trans–Gulf's breach of implied warranty claim. Citing *Melody Home Manufacturing Company v. Barnes,* 741 S.W.2d 349 (Tex.1987), Trans–Gulf argues that an implied warranty of good and workmanlike performance should apply to the work performed by Performance and by Associated on the fuel tanks. The Texas Supreme Court recently addressed the circumstances in which courts should imply a warranty of good and workmanlike performance in *Rocky Mountain Helicopters, Inc. v. Lubbock County Hospital District,* 987 S.W.2d 50 (Tex.1998). The court first noted that an implied warranty for services has only been recognized when the services relate to the re-

pair or modification of existing tangible goods or property. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hospital District*, supra at 52–53. An implied warranty that services will be performed in a good and workmanlike manner may arise under common law when public policy mandates. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hospital District*, supra at 53. The court held that public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need.

We do not find a demonstrated, compelling need to impose an implied warranty of good and workmanlike performance to the repair work performed by Performance and Associated. Our decision in this regard is heavily persuaded by the economic loss rule. Implied warranties are grounded more in tort than in contract. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hospital District*, supra at 52; *La Sara Grain Company v. First National Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex.1984). If the economic loss rule precludes a negligence cause of action sounding in tort, we see no reason why it should not also preclude other causes of action sounding in tort. As was the case with the computer software problem in *Hou–Tex*, we believe that Performance's and Associated's liability for allegedly deficient repairs resulting only in economic loss should be restricted to the risk allocations contained within the contracts between Performance, Associated, and Kingdom and between Kingdom and Trans–Gulf. All issues raised on appeal have been considered and are overruled.

The judgment of the trial court is affirmed.