Opinion
issued May 28, 2010








 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 
   

            

 














 

   

  

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 


 
 

 
 



NO. 01-08-00398-CV

 


 
 

 
 



THE HARTFORD AND MR. AND MRS. DONALD ORRELL,
Appellants

 

V.

 

LYNDON-DFS WARRANTY SERVICES, INC., LYNDON PROPERTY
INSURANCE COMPANY, AND FORETRAVEL OF TEXAS, INC., Appellees

 


 
 

 
 
 



On Appeal from the 149th District Court

Brazoria County, Texas

Trial Court Cause No. 19096








 


 
 

 
 
 



MEMORANDUM OPINION

 

          Appellants,
Donald and Coral Ann Orrell, were traveling in their motor home through a
mountain pass in Colorado when the motor home caught fire, destroying the motor
home, its contents, and the vehicle they were towing.  Their automotive and homeowner’s insurance carrier,
appellant The Hartford, reimbursed the Orrells for a portion of their
losses.  The Orrells and Hartford
(collectively, “appellants”) sued appellee, Foretravel of Texas, Inc., the
manufacturer and seller of the motor home, for breach of contract, breach of express
and implied warranties, products liability, and negligence.  In addition, appellants sued appellees,
Lyndon-DFS Warranty Services, Inc. and Lyndon Property Insurance Company
(“Lyndon”), the administrator and insurer of a service agreement covering the motor
home, for breach of contract and breach of warranty.

          The
trial court granted a partial summary judgment in favor of Foretravel on
appellants’ breach of implied warranties claims and granted a summary judgment
in favor of Lyndon as to all claims.  The
remaining claims against Foretravel were tried to the bench and judgment was
rendered in favor of Foretravel, resulting in a final, appealable judgment as
to all claims and all parties.

          In
eight issues, appellants contend that the trial court erred by granting both
summary judgments.  The claims tried to
the bench are not before us in this appeal. 

          We
affirm, in part, and reverse and remand, in part.

 

Summary of Facts and Procedural
History

In November 1999, the Orrells inquired
about purchasing a motor home from Foretravel, a recreational vehicle dealer in
Nacogdoches, Texas.  According to
Foretravel, a motor home fitting the Orrells’ needs was expected to arrive as a
trade-in from another customer. 
Foretravel completed a Retail Buyer’s Order (“Preliminary Buyer’s Order”),
and the Orrells submitted a deposit to hold the incoming coach.  

On January 31, 2000, the Orrells took
delivery of a 1997 Foretravel 34-foot motor home with approximately 21,000
miles on the odometer, for $160,791.24.  Foretravel’s sales representative, Glenda
Browne, executed a second Retail Buyer’s Order (“Final Buyer’s Order”), which
is signed by Mr. Orrell.  

Boilerplate language in both the
Preliminary and Final Buyer’s Orders states as follows:  

THE DEALER EXPRESSLY DISCLAIMS AND THE BUYER EXPRESSLY
WAIVES ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF
MERCHANTABILITY OF SECTION 2-3-12 OF THE UNIFORM COMMERCIAL CODE AND THE
WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER SECTION 2-3-15 OF THE
UNIFORM COMMERCIAL CODE.

 

At the time of purchase, Foretravel
also sold to the Orrells a service plan, “Motor Home Plus: The DFS Advantage
Plan Provisions for New & Used Motor Homes” (“Plan”).  The Plan is a service agreement providing certain
coverage for mechanical breakdown of the motor home. 

          Pursuant
to the Declarations Section, the Plan became effective on February 7, 2000, and
expired on February 7, 2001, or at 33,377 miles.  It was administered by Lyndon-DFS Warranty
Services, Inc. and insured by Lyndon Property Insurance Company.   The Plan provides as follows, in pertinent
part:

DEFINITIONS: 

The following are key words and phrases which are
included in these Plan provisions which have particular meaning:

. . . .

Mechanical Breakdown – means the failure of a covered
part, making that covered part incapable of performing the function for which
it was designed by the manufacturer, due solely to defects in materials or
faulty workmanship of a covered component.

. . . .

A SERVICE AGREEMENT:

This plan is a service agreement and/or referral
agreement between you and us.  It
protects you should a Mechanical Breakdown occur during normal use.  We are responsible for fulfillment of the
provisions under this plan.

 

Our fulfillment of the provisions under your plan is
guaranteed under a reimbursement insurance policy issued by the insurance
company stated in the declaration section of these provisions.  You are entitled to make a direct claim
against the insurance company if we fail to pay any claim within sixty (60)
days after proof of loss has been filed with us.

. . . .

 

LIMITS OF LIABILITY:

The per claim liability under this Plan shall in no
event exceed the cash value of the Vehicle immediately before the Mechanical
Breakdown.  The total of all benefits
paid or payable under this Plan shall not exceed the price You paid for the
Vehicle.

 

The Plan provides a series of steps
for obtaining plan services and specifies the covered components.  Further, the Plan lists a number of
exclusions. 

On June 19, 2000, the motor home was
serviced at the Foretravel dealership.  The service invoice states, in part, “FUEL
SENDER WAS REPLACED AND WILL NOT COME OFF OF FULL. . . . TECH COMM: CHECK
WIRING FOR SENDING UNIT. FOUND WIRED INCORRECTLY. REWIRE AND TEST OPERATION. .
. MISCELLANEOUS FUEL SYSTEM REPAIRS.”

          On
July 24, 2000, the Orrells were driving the motor home through a mountain pass
in Colorado when it caught fire, resulting in a total loss of the motor home,
its contents, and the 1997 Kia Sportage being towed behind the motor home.  The Orrells filed a claim with their automotive
and homeowner’s insurer, Hartford, which paid some portion of the Orrells’
claim.

          By
letter dated October 17, 2000, the Orrells notified Foretravel that the coach had
burned on July 24, 2000 with 24,100 miles on the odometer.  On October 26, 2000, the Orrells notified
Lyndon of same.

          By
letter dated December 28, 2001, counsel for the Orrells provided Foretravel
with notice of the losses. The letter stated that a fire and mechanical expert
had inspected the motor home and had determined that heat generated by leaking electrical
current, which was caused by damaged insulation on an electrical cable running
through a steel bracket, had ignited adjacent combustible materials.  The letter asserted that the fire was caused
by the conduct of Foretravel in the manufacture, design, sales or servicing of
the motor home and makes demand for $193,132.87 in damages, plus attorney’s
fees.  The letter also invited Foretravel
to inspect the motor home.

          Also,
by letter dated December 28, 2001, counsel for the Orrells provided Lyndon with
notice of the losses and demanded repair or replacement of the motor home, or
reimbursement of $166,658.18, under the Plan. 
The letter invited Lyndon to inspect the motor home.

          In
January 2002, Lyndon’s representative, Lisa Faciane, hired Bill Schultz to
inspect the motor home.  According to
Faciane’s deposition testimony, Schultz’s inspection was inconclusive.  Faciane then denied the claim.  Faciane attested that the denial was not
based on any failure by the Orrells or Hartford to comply with the terms of the
Plan or with any request by Lyndon.

          On
March 12, 2002, Hartford, as subrogee to the Orrells claims, sued Foretravel for
breach of contract, breach of express and implied warranties, products
liability, and negligence.  In addition,
Hartford sued Lyndon for breach of contract.[1] Hartford
sought $193,000 in economic damages. 

In June 2002, in its first amended
petition, Hartford added the Orrells as plaintiffs. 

Summary Judgment for Lyndon

          In
October 2002, Lyndon moved for a traditional summary judgment. Lyndon asserted that
it did not breach the Plan because, pursuant to certain exclusions in the Plan,
it had not promised that it would pay for the type of losses claimed and that
the Orrells had failed to comply with the terms of the Plan by failing to give
notice of their losses in accordance with the Plan.  To support its motion, Lyndon attached the
original petition, the Plan, and the Orrells’ depositions.      

In November 2002, in their response
to the motion for summary judgment, appellants contended, inter alia, that that
the exclusions were inapplicable and that they had timely complied with the
terms of the Plan.  Appellants further contended
that Lyndon’s defenses were barred by waiver and estoppel.  

As evidentiary support, appellants
attached to their response the Plan; the service invoice from Foretravel, dated
June 19, 2000; the notice from the Orrells to Lyndon, dated October 26, 2000; the
letter of notice and demand from the Orrells’ counsel to Lyndon, dated December
28, 2001; the depositions of Faciane and the Orrells; and the expert report of Judd
Clayton, Jr., an electrical engineer and expert on electrical product failures,
who opined that the fire was caused by a defect “in a U-shaped metal strap
being utilized to support numerous wires/cables and hoses” that caused an
energized wire to become trapped and to ignite combustible material in an area
just forward of the engine compartment. 

On November 12, 2002, the trial court
granted summary judgment in favor of Lyndon on all claims and rendered judgment
that appellants take nothing.

Summary Judgment for Foretravel 








          On
March 14, 2003, Foretravel moved for a traditional summary judgment as to
appellants’ breach of implied warranties claims.  Foretravel asserted that all implied
warranties had been disclaimed by Foretravel and waived by the Orrells in the Buyer’s
Order. 

To support its motion, Foretravel
attached appellants’ petition, as amended; the Preliminary Buyer’s Order; the
Plan; and excerpts of the depositions of Browne, of Floyd Wilcox, Vice
President of Foretravel, and of Donald Orrell. 


In April 2003, in their response to
Foretravel’s motion for summary judgment, appellants objected to Preliminary
Buyer’s Order on the ground that it was inadmissible.  Specifically, appellants contended that it
was not authenticated, that the Order expressly states on its face that it is
not a contract, and that it is not signed by the Orrells.  

As evidentiary support, appellants
attached to their response the Plan;  excerpts of the depositions of Foretravel
representatives Browne and Wilcox, and of the Orrells; the service invoice from
Foretravel; and the expert affidavit of Judd Clayton, Jr., attesting that he
had inspected the motor home and opining that the fire was caused by a defect
“in a U-shaped metal strap being utilized to support numerous wires/cables and
hoses” that caused an energized wire to become trapped and to ignite
combustible material in an area just forward of the engine compartment.

On July 16, 2003, the trial court
granted summary judgment in favor of Foretravel on the breach of implied
warranties claims.[2]  

By their appeal, appellants challenge
the traditional summary judgment rendered in favor of Lyndon on appellants’
breach of contract claim and challenge the traditional summary judgment
rendered in favor of Foretravel on appellants’ breach of implied warranties
claims.

Standard of Review

A summary judgment under Rule of
Civil Procedure 166a(c) is properly granted only when a movant establishes that
there are no genuine issues of material fact and that he is entitled to
judgment as a matter of law.   Tex. R.
Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999).   A defendant moving for summary judgment must
either (1) disprove at least one element of the plaintiff’s cause of action, or
(2) plead and conclusively establish each essential element of an affirmative
defense to rebut plaintiff’s cause.  Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995).  In deciding whether there is a
disputed material fact precluding summary judgment, evidence favorable to the
non-movant will be taken as true, every reasonable inference must be indulged
in favor of the non-movant, and any doubts resolved in its favor.  Provident Life and Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  The
movant must conclusively establish its right to judgment as a matter of
law.  See MMP, Ltd. v. Jones, 710
S.W.2d 59, 60 (Tex. 1986).  A matter is
conclusively established if reasonable people could not differ as to the
conclusion to be drawn from the evidence. 
City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005). 

We review a trial court’s granting of
a traditional summary judgment de novo.  Knott, 128 S.W.3d at 215.  We may affirm a summary judgment only on
grounds specifically stated in the motion. McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex. 1993); Cruikshank v. Consumer Direct Mortg., Inc.,
138 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  When, as here, the trial court’s order
granting summary judgment does not specify the grounds on which it was granted,
it must be affirmed if any of the grounds asserted are meritorious. W. Invs., Inc. v. Urena, 162 S.W.3d 547,
550 (Tex. 2005); Aleman v. Ben. E. Keith
Co., 227 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Summary Judgment for Lyndon

          In their first through fifth issues,
appellants contend that the trial court erred by granting summary judgment in
favor of Lyndon on appellants’ breach of contract claim.  Specifically, appellants contend that the trial
court erred, “[t]o the extent that the trial court found that as a matter of
law that” (1) “the mechanical breakdown insurance coverage exclusion applied to
bar Appellants’ claims against Lyndon”; (2) “the fire exclusion applied to bar
Appellants’ claims against Lyndon”; (3) “the incidental and consequential
damage exclusion applied to bar Appellants’ claims against Lyndon”; (4)
“Appellants failed to comply with the terms of the contract with Lyndon”; and
(5) “Appellants could not bring a valid claim for attorney’s fees against
Lyndon.”  

 

A.              
Damages Exclusion

 

In their third issue, appellants
contend that the trial court erred by concluding, as a matter of law, that “that
the incidental and consequential damage exclusion” in the Plan barred
appellants’ breach of contract claim.

The essential elements of a breach of
contract claim are (1) the existence of a valid contract; (2) performance or
tendered performance by the plaintiff; (3) breach of the contract by the
defendant; (4) damages sustained as a result of the breach.  Valero Mktg. & Supply Co. v. Kalama
Int’l, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no
pet.).  

By their petition, appellants generally
contended that Lyndon “breached [the] contract with and warranties to the
Orrells, rendering them liable for actual damages caused by their breach.”

In its motion for summary judgment,
Lyndon contended, 

The Plan covers only the cost of repair in the event
of a ‘Mechanical Breakdown’ which means ‘the failure of a covered part’. . . .
Any property damage above and beyond the repair of that part, including without
limitation the loss of the motor home, the Kia Sportage, and the contents
therein, are all consequential and incidental damages that the Plan does not
cover.

 

As its evidence, Lyndon
directs us to the Plan.

 

The Plan states that it is a “Service
Agreement” that protects against “Mechanical Breakdown . . . during normal
use.”  “Mechanical Breakdown” is a term
with “particular meaning” under the agreement, as follows:

Mechanical Breakdown – means the failure of a covered
part, making that covered part incapable of performing the function for which
it was designed by the manufacturer, due solely to defects in materials or
faulty workmanship of a covered component.

 

In addition, the Plan provides an
extensive—two full pages of the total five-page agreement—list of “Covered
Components” and provides instructions for the return of the vehicle to the
dealer for repair services.  The Plan
also provides coverage for towing, road service, a substitute vehicle, and
travel expenses, while the vehicle is being repaired.  Further, the Plan contains an extensive list
of exclusions, including, at paragraph 10:

THE PLAN WILL NOT COVER OR APPLY TO LOSS OR EXPENSE
RESULTING FROM: . . . Liability for incidental
and consequential damages, including but not limited to . . . physical
damage, property damage, loss of use
of described Vehicle. . . .” (Emphasis added.)

 

It is a basic premise of contract
interpretation that unambiguous contracts are construed as a matter of law.  Coker v.
Coker, 650 S.W.2d 391, 393-94 (Tex.1983); Transcon. Gas Pipeline Corp. v. Texaco, Inc., 35 S.W.3d 658, 665
(Tex. App.—Houston [1st Dist.] 2000, pet. denied).  In construing a contract, we attempt to
ascertain the parties’ true intent “as expressed in the instrument.”  Nat’l
Union Fire Ins. Co. v. CBI Indus. Inc., 907 S.W.2d 517, 520 (Tex. 1995). We
presume that the parties intended for every clause to have some effect. Heritage Res., Inc. v. NationsBank, 939
S.W.2d 118, 121 (Tex. 1996). “We give terms their plain, ordinary, and
generally accepted meaning unless the instrument shows that the parties used
them in a technical or different sense.” Id.
 

By its plain language, the Plan is
intended as an agreement to provide repair services in the event that a
specific mechanical component of the motor home fails during normal use.  The Plan also reflects that it is intended to
cover expenses related to returning the vehicle to the dealer for repair and
for certain travel expenses.  The Plan
states that Lyndon’s promise to provide repair services is guaranteed under a
“reimbursement insurance policy” issued by Lyndon-Property Insurance Company,
but nothing in this language, or in any other, suggests that the Plan is
intended to provide general insurance coverage against losses attributable to
the failure of a covered component—whether direct or consequential in nature.[3]   

To the contrary, paragraph 10 of the
exclusions specifically excludes liability for damages that the Plan defines as
incidental and consequential, i.e., property damage.  This language evidences that the parties
intended to limit the remedies available in the event of a breach of the
contract.  See GT & MC, Inc. v. Tex. City Ref., Inc., 822 S.W.2d 252, 256
(Tex. App.—Houston [1st Dist.] 1991, writ denied); see also Frost Nat’l Bank v. Heafner, 12 S.W.3d 104, 110-11 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied) (reversing award of consequential
damages when contract excluded liability for consequential damages). 

Considering the Plan as a whole, we conclude
that the parties intended that the Plan cover the cost of repairing certain covered
components of the vehicle when they break down during normal use and that
nothing in the Plan suggests that the parties intended that the Plan insure
against property damage attributable to the failure of a component.  See Arthur
Andersen & Co. v. Perry Equip. Co., 945 S.W.2d 812, 816 (Tex. 1997).  We conclude that Lyndon met its burden to show
that it is entitled to judgment.  See Cathey,
900 S.W.2d at 341.  

Once Lyndon met its burden, the
burden shifted to appellants to raise a genuine issue of material fact.  See
Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995) (stating that only after defendant establishes his
right to summary judgment burden shifts to plaintiff to come forward with
competent, controverting evidence raising genuine issue of material fact).

 

By their response, appellants contended
that “Lyndon admitted that it did not even offer to repair the defective part.”  Appellants generally contended that Lyndon
breached the agreement by failing to reimburse appellants for the motor home,
which burned down during the Plan period. 
Appellants did not assert that the “defective part” was a covered
component under the Plan and did not point to any provision of the Plan that
could be construed in a way that Lyndon’s obligations extended beyond the costs
associated with the repair of a covered part. 
We cannot conclude that appellants have raised a genuine issue of
material fact with regard to the coverage of property damage under the Plan.  

We conclude that Lyndon met its
burden to prove that it is entitled to summary judgment as a matter of
law.  See Jones, 710 S.W.2d at 60.

Accordingly, appellants’ third issue
is overruled.

When, as in this case, the trial
court does not specify in its order the grounds on which it granted summary
judgment, we must affirm the summary judgment if any of the grounds presented
are meritorious. See Urena, 162 S.W.3d at 550.  Having found a ground raised by Lyndon to be
meritorious, we need not discuss the other summary judgment grounds raised by
Lyndon in its motion and challenged by appellants on appeal. See Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989).  Hence, we do not reach appellants’
first, second, and fourth issues.

B.           
Attorney’s Fees

In their fifth issue, appellants contend
that “[t]o the extent that the trial court found that as a matter of law that Appellants
could not bring a valid claim for attorney’s fees against Lyndon” the trial
court’s holding was erroneous.          

A party cannot recover attorney’s
fees unless permitted by statute or contract. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999).  A party who prevails on a breach of contract
claim may recover its reasonable attorney’s fees under section 38.001(8) of the
Texas Civil Practice and Remedies Code.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). The party
must (1) prevail on a cause of action for which attorney’s fees are available
and (2) recover damages. Green Int’l,
Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997).  

Here, having determined above that
appellants did not prevail and will receive no recovery, they are not entitled
to attorney’s fees under section 38.001. See
Cytogenix, Inc. v. Waldroff, 213 S.W.3d 479, 489-90 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied); Burgmann Seals
Am., Inc. v. Cadenhead, 135 S.W.3d 854, 860-61 (Tex. App.—Houston [1st
Dist.] 2004, pet. denied).

          Accordingly,
appellants’ fifth issue is overruled.

 

 

Summary Judgment for Foretravel

A.              
Evidentiary Complaints

In their sixth and seventh issues, appellants
contend that the trial court erred by considering, over their objections, the
Preliminary and Final Buyer’s Orders presented by appellees as proof that the
Orrells waived any implied warranties.

Foretravel appended to its motion for
summary judgment the Preliminary Buyer’s Order, dated November 29, 1999, which
states a purchase price of $163,748.97. 
In their response, appellants objected to the Preliminary Buyer’s Order on
various grounds.  Foretravel then filed a
Reply, to which it appended the Final Buyer’s Order, dated January 31, 2000,
stating a purchase price of $160,791.24. 
The boilerplate language in both Buyer’s Orders is identical.

1.                
Standard of Review

We review a trial court’s decision to
admit or exclude summary judgment evidence for an abuse of discretion. See K-Mart Corp. v. Honeycutt, 24 S.W.3d
357, 360 (Tex. 2000); Paciwest, Inc. v. Warner
Alan Props., LLC, 266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied).  A trial court abuses its discretion if it
acts without any reference to any guiding rules or principles. See Carpenter v. Cimarron Hydrocarbons Corp.,
98 S.W.3d 682, 687 (Tex. 2002).  We must uphold
the trial court’s ruling if there is any legitimate basis in the record to
support it. Owens-Corning Fiberglas Corp.
v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). 
We will not reverse a trial court for an erroneous evidentiary ruling
unless the error probably caused rendition of an improper judgment. See Tex.
R. App. P. 44.1;Wal-Mart Stores,
Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2003).

2.                
Final Buyer’s Order

As its summary judgment evidence that
Foretravel disclaimed, and that appellants’ waived, any implied warranties, Foretravel
appended the Final Buyer’s Order and the affidavit of Floyd Wilcox, Vice
President of Foretravel.  The Final
Buyer’s Order states 

THE DEALER EXPRESSLY DISCLAIMS AND THE BUYER EXPRESSLY
WAIVES ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF
MERCHANTABILITY OF SECTION 2-3-12 OF THE UNIFORM COMMERCIAL CODE AND THE
WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER SECTION 2-3-15 OF THE
UNIFORM COMMERCIAL CODE.

 

By his affidavit, Wilcox attested
that the Final Buyer’s Order is a “true and correct copy of the final Retail
Buyer’s Order signed and executed by Donald Orrell,” setting forth the terms of
the sale.  Wilcox attested that the Final
Buyer’s Order “is based on a worksheet completed by Glenda Browne.”  

In their seventh issue, appellants
contend that the Final Buyer’s Order “was inadmissible on the following grounds:”
(a) the Final Buyer’s Order was not “properly authenticated” because Wilcox lacked
the requisite personal knowledge to make the affidavit; (b) a conflict between
the substance of Wilcox’s affidavit and his deposition testimony renders the
affidavit “invalid”; (c) the Final Buyer’s Order “expressly states on its face
that it is not a contract”; and (d) the Orrells subjectively believed that they
were receiving a warranty with the sale. 

The parties dispute whether this
issue has been preserved.  We need not
resolve the question because the issue cannot be sustained on the grounds
appellants advance.  

a.                
Proper
Authentication

Appellants first contend that the
Final Buyer’s Order was not “properly” authenticated.  Specifically, appellants contend that “Wilcox
did not have the requisite personal knowledge to authenticate the document”
because he testified in his deposition that he had not met the Orrells until
after the fire.  

Documents submitted as summary
judgment proof must be sworn or certified. Tex.
R. Civ. P. 166a(f); see Llopa,
Inc. v. Nagel, 956 S.W.2d 82, 87 (Tex. App.—San Antonio 1997, pet.
denied).  Documents that are
unauthenticated, unsworn, or not supported by affidavit are not entitled to
consideration as summary judgment proof. Mackay
v. Great Lakes Invs., Inc., 255 S.W.3d 243, 252 (Tex. App.—San Antonio
2008, pet. denied); Nagel, 956 S.W.2d
at 87.

Rule of Civil Procedure 166a(f)
requires that “affidavits shall be made on personal knowledge, shall set forth
such facts as would be admissible in evidence, and shall show affirmatively
that the affiant is competent to testify to the matters stated therein.”  Tex.
R. Civ. P. 166a(f).  The record
shows that Wilcox attested in his affidavit that he is competent to testify,
that the facts he sets out are based on his personal knowledge, and are true
and correct.  Wilcox attests that he is
Vice President of Foretravel; that the Final Buyer’s Order constitutes the
final agreement between Foretravel and the Orells; that it sets forth the terms
of the sale of the motor home; and that the information contained in the Final
Buyer’s Order was “obtained from a worksheet completed by Glenda Louise
Browne.” 

Wilcox was not, as appellants urge,
required to have personally created the invoice or to have “met the Orrells”;
rather, he was required to show how he gained his personal knowledge. See Tex.
R. Civ. P. 166a(f); Frank’s Int’l,
Inc. v. Smith Int’l Inc., 249 S.W.3d 557, 565-66 (Tex. App.—Houston [1st
Dist.] 2008, no pet.) (stating that affidavit must affirmatively show manner in
which affiant became personally familiar with facts). Wilcox has satisfied the
requirement that “affidavits shall be made on personal knowledge” because his affidavit
shows that the position he holds is as such that it may reasonably be assumed
that he is peculiarly situated to have personal knowledge.  See Miller
v. Raytheon Aircraft Co., 229 S.W.3d 358, 365-66 (Tex. App.—Houston [1st
Dist.] 2007, no pet.); Waite v.
BancTexas–Houston, N.A., 792 S.W.2d 538, 540-41 (Tex. App.—Houston [1st
Dist.] 1990, no writ).  

b.                
“Validity”

Next, appellants contend that the
Final Buyer’s Order was “inadmissible” because “[t]he fact that Foretravel
presented two purported contracts of two different dates and two entirely
different amounts in and of itself raises a question of fact as to the validity
of each separate document.” In addition, Wilcox testified in his deposition
that the Preliminary Buyer’s Order was the sales invoice for the motor home; in
his affidavit, Wilcox identified the Final Buyer’s Order as the sales invoice
for the motor home.  

Because the issue before us is the
propriety of the trial court’s summary judgment ruling on appellants’ breach of
implied warranties claim, and the disclaimer of implied warranties is identical
in the Preliminary and Final Buyer’s Orders, we cannot conclude that an
erroneous evidentiary ruling in this regard probably resulted in the rendition
of an improper judgment. See Tex. R. App. P. 44.1; Johnson, 106 S.W.3d at 723.

 

 

c.                 
Contract

Next, appellants contend that the
Final Buyer’s Order “was inadmissible” because it “expressly states on its face
that it is not a contract.”  Appellants
do not direct us to any authority to support their contention that the Final
Buyer’s Order was inadmissible on this basis. 
As such, the issue is inadequately briefed.  See
Tex. R. App. P. 38.1.  

d.                
Subjective
Beliefs

Finally, appellants contend that the
Orrells “believed they were receiving a warranty with the sale.”  Appellants do not direct us to any authority
to support that the Orrells’ subjective beliefs rendered the Final Buyer’s
Order “inadmissible.”  See id.

Accordingly, we overrule appellants’
seventh issue.  

3.                
Preliminary Buyer’s Order

In their sixth issue, appellants
contend that the Preliminary Buyer’s Order was inadmissible because, inter
alia, it was not authenticated.  

The record shows that the Preliminary
Buyer’s Order attached to Foretravel’s motion for summary judgment is not
accompanied by any form of authentication, such as an affidavit.  Copies of documents, such as notes and
contracts, must be accompanied by a properly sworn affidavit.  See
Hewlett-Packard Co. v. Benchmark Elecs. Inc., 142 S.W.3d 554, 564 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied). 
Unauthenticated, uncertified, or unsworn documents are not entitled to
consideration as summary judgment proof. Mackay,
255 S.W.3d at 252.

As such, the trial court erred to the
degree, if any, that it considered the First Buyer’s Order in ruling on the
summary judgment.  The error was
harmless, however, because the same evidence was properly admitted in the Final
Buyer’s Order.  See Tex. R. App. P.
44.1.  The only language in the Preliminary
Buyer’s Order that concerns implied warranties is the same boilerplate language
disclaiming the warranties, quoted above in issue seven, that appears in the
Final Buyer’s Order.  

Accordingly, we overrule appellants’
sixth issue.

B.              
Summary Judgment

In their eighth issue, appellants
contend that the trial court erred by granting a traditional summary judgment
in favor of Foretravel on appellants’ implied warranty claims.  

By their petition, appellants alleged
that Foretravel breached implied warranties of merchantability, fitness for a
particular purpose, and good workmanship, seeking recovery under the Texas
Deceptive Trade Practices Act. See Tex. Bus. & Comm. Code Ann. §17.50 (Vernon Supp. 2009).  

Implied warranties arise by operation
of law.  JCW Elecs., Inc. v. Garza, 257 S.W.3d 701, 704 (Tex. 2008).  The DTPA does not itself create any
warranties; rather, it provides heightened remedies for the breach of implied
warranties that arise under statute or common law.  Parkway
Co. v. Woodruff, 901 S.W.2d 434, 438 (Tex. 1995).  Hence, the plaintiff must rely on other
statutory provisions or common law to establish the warranty.  Id.  Liability for a DTPA claim based on a breach
of implied warranty may be waived if the warranty can be disclaimed under the law creating it.  See Sw.
Bell Tel. Co. v. FDP Corp., 811 S.W.2d 572, 576-77 (Tex. 1991).

1.                
Claims arising under the Uniform
Commercial Code

Claims of breach of implied warranty
of merchantability and of fitness for a particular purpose arise under the
Uniform Commercial Code (“UCC”).  See Tex.
Bus. & Com. Code Ann. §§ 2.314, .315 (Vernon 2009). The UCC governs
transactions involving the sale of goods, such as motor vehicles.  FDP
Corp., 811 S.W.2d at 574; Mueller v.
McGill, 870 S.W.2d 673, 675 n.1 (Tex. App.—Houston [1st Dist.] 1994, writ
denied).  

To prevail on a claim of breach of
implied warranty of merchantability, a plaintiff must show as follows: (1) that
the merchant sold goods to the plaintiff; (2) that the goods were
unmerchantable, that is, unfit for ordinary purposes; (3) that the plaintiff
notified the defendant of the breach; and (4) that the plaintiff suffered
injury.  See Tex. Bus. & Com.
Code Ann. § 2.314
cmt.3; Hyundai Motor Co. v. Rodriguez,
995 S.W.2d 661, 667-68 (Tex. 1999); Roventini
v. Ocular Scis., Inc., 111 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.]
2003, no pet.) (citing Plas-Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 444 (Tex. 1989)).

To establish a breach of the implied
warranty of fitness for a particular purpose, the plaintiff must establish that
(1) the seller had reason to know any particular purpose for which the goods
were required at the time of contracting and (2) the buyer was relying on the
seller’s skill or judgment to select or furnish suitable goods. Tex. Bus. & Com. Code Ann. § 2.315
(Vernon 2009); ASAI v. Vanco Insulation
Abatement, Inc., 932 S.W.2d 118, 121 (Tex. App.—El Paso 1996, no writ).

A defendant may assert the defense of
disclaimer under the UCC.  See Tex.
Bus. & Com. Code Ann. § 2.316(b) (Vernon 2009); FDP Corp., 811 S.W.2d at 577. 
A disclaimer of the implied warranty of merchantability must be
conspicuous and state the word, “merchantability.”  See Tex. Bus. & Com. Code Ann. § 2.316(b).[4]   Whether
a disclaimer is conspicuous is a question of law for the court.  See Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (Vernon 2009).  A term is conspicuous if it is written so
that a reasonable person against whom it is to operate should have noticed it. Tex. Bus. & Com. Code Ann. § 1.201(b)(10).  Specifically, language in the body of a
document is conspicuous if it is set off from the surrounding text by symbols
or marks that draw attention to it or it is in larger type than the surrounding
text or in contrasting type, font, or color. See Tex. Bus. Com. Code Ann.
§ 1.201(b)(10).

The implied warranty of fitness may
be disclaimed in the same manner, except that it may be disclaimed by general
language. See Morgan Bldgs. and Spas, Inc. v. Humane Society of Se. Tex., 249
S.W.3d 480, 490 (Tex. App.—Beaumont 2008, no pet.) (showing that language need
not specifically use term, “fitness”).

Here, by its answer, as amended,
Foretravel asserted the affirmative defense of waiver.  Foretravel moved for summary judgment on the
basis that, inter alia, any and all implied warranties were disclaimed by
Foretravel and waived by the Orrells in the Buyer’s Order.  Foretravel appended, as its summary judgment
evidence on this point, the Final Buyer’s Order, which states: 

THE DEALER EXPRESSLY DISCLAIMS AND THE BUYER EXPRESSLY
WAIVES ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF
MERCHANTABILITY OF SECTION 2-3-12 OF THE UNIFORM COMMERCIAL CODE AND THE
WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER SECTION 2-3-15 OF THE
UNIFORM COMMERCIAL CODE

 

Foretravel’s disclaimer is set out
from the surrounding text, is in all capital letters and bold print, and states
that it applies to “merchantability.”  We
conclude that the disclaimer meets the conspicuousness requirement of section 2.316.  See Tex. Bus. & Com. Code Ann. §§
1.201(b)(10), 2.316(b); Humane Society of Se. Tex., 249 S.W.3d
at 490. 

Once Foretravel met its burden with
regard to its defense of waiver, the burden shifted to appellants to raise a
genuine issue of material fact. See Siegler,
899 S.W.2d at 197.

In their response to this issue, appellants
contended that Foretravel failed to comply with Texas Business and Commerce
Code section 2.316(b) in that any exclusions or modifications of the implied
warranty of merchantability and fitness were required to be conspicuous and
that, here, they were not.  Because we have
determined that Foretravel’s disclaimer meets the requirements of article
2.316, appellants do not raise a genuine issue of material fact in this regard.

We conclude that summary judgment was
proper as to appellants’ claims of breach of the implied warranty of
merchantability and implied warranty of fitness because these warranties were
disclaimed and waived in the Final Buyer’s Order in a manner that complies with
article 2.316. See Tex. Bus. & Com. Code Ann. § 2.316.  

Accordingly, we overrule appellants’
eighth issue insofar as it applies to appellants’ claims of breach of the
implied warranties of merchantability and fitness.

2.                
Claim arising under the Common Law

A claim of breach of implied warranty
of good workmanship arises under common law. 
See Rocky Mountain Helicopters,
Inc. v. Lubbock County Hosp. Dist., 987 S.W.2d 50, 53 (Tex. 1998).  Common law warranties only protect
services.  FDP Corp., 811 S.W.2d at 574. 
To establish a breach of the implied warranty of good workmanship in the
repair and modification of existing tangible goods, the plaintiff must
establish that (1) the defendant sold services to the plaintiff; (2) that the
services consisted of repair or modification of plaintiff’s existing tangible
goods; (3) the defendant did not perform the services in a good and workmanlike
manner; and (4) the plaintiff suffered injury. 
See Rodriguez, 995 S.W.2d at 667-68;
Woodruff, 901 S.W.2d at 438-39 & n.3.

Foretravel argued in its motion for
summary judgment that the disclaimer language in the Buyer’s Order extends to
the warranty of good and workmanlike performance, as follows: “THE DEALER
EXPRESSLY DISCLAIMS AND BUYER EXPRESSLY WAIVES ANY IMPLIED WARRANTIES.” 

The supreme court has held that the
implied warranty of good and workmanlike performance in the repair or
modification of existing tangible goods may not be disclaimed or waived.  Melody
Home Mfg. Co.  v. Barnes, 741 S.W.2d
349, 355 (Tex. 1987); see Bynum v.
Prudential Residential Servs., Ltd., 129 S.W.3d 781, 794 (Tex. App.—Houston
[1st Dist.] 2004, pet. denied).  

Foretravel also asserts, “The
warranty of good workmanship has been properly disclaimed under the language
of” UCC article 2.316.  The warranty of
good workmanship does not arise under the UCC and, as such, the UCC does not provide
exclusions.  See Rocky Mountain Helicopters, Inc., 987 S.W.2d at 53; FDP Corp., 811 S.W.2d at 576-77.  

 

We may affirm a summary judgment only
on grounds specifically stated in the motion. See McConnell, 858 S.W.2d at 339.  There being no other basis asserted by
Foretravel in its motion for summary judgment, we conclude that the trial court
erred by granting summary judgment on this claim.   Only if Foretravel established its right to
summary judgment does the burden shift to appellants to come forward with
competent, controverting evidence raising genuine issue of material fact. See Siegler, 899 S.W.2d at 197. 

Accordingly, appellants’ eighth issue
is sustained insofar as it applies to appellants’ claim of breach of the
implied warranty of good workmanship.

 

 

 

 

 

 

 

 

 

 

 

CONCLUSION

 

          We
affirm the judgment of the trial court granting of summary judgment in favor of
Lyndon on appellants’ breach of contract claim and in favor of Foretravel on appellants’ claims of breach of the
implied warranties of merchantability and fitness. We conclude
that the trial court erred by granting summary judgment in favor of Foretravel
on appellants’ claim of breach of implied warranty of good workmanship.  We reverse the trial court’s judgment and remand
for further proceedings.  

          

 

 

 

                                                          Laura
Carter Higley       

                                                          Justice

 

 

Panel consists of
Chief Justice Radack and Justices Alcala and Higley.











[1]               Hartford
also sued appellees for “laundry list” violations of the Texas Deceptive Trade
Practices Act and sued Lyndon for breach of implied warranties.  These claims were later dropped.  





[2]               Foretravel
moved for a no-evidence summary judgment as to appellants’ breach of contract
and breach of express warranty claims, which the trial court denied.  These claims were later tried to the bench,
resulting in a judgment in favor of Foretravel. The trial court rendered
judgment that appellants take nothing by their suit against Foretravel and
Lyndon. These claims are not before us in this appeal. The trial court’s
judgment states that it is final and disposes of all claims and all parties. 





[3]               “Direct
damages” are those that flow naturally and necessarily from the breach.  Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex.
1997).  “Direct damages” compensate for
the loss, damage, or injury that is conclusively presumed to have been foreseen
or contemplated by the party as a consequence of his breach or wrongful
act.”  Id.  “Consequential damages”
are those which result naturally, but not necessarily, from a breach.  Id.  Consequential damages must be foreseeable and
must be directly traceable to the wrongful act and result from it. Id.  





[4]              Business and Commerce Code section 2.316(b) provides,
in pertinent part, as follows:

 

(b)       Subject to Subsection (c), to exclude or
modify the implied warranty of merchantability or any part of it the language
must mention merchantability and in case of a writing must be conspicuous, and
to exclude or modify any implied warranty of fitness the exclusion must be by a
writing and conspicuous. Language to exclude all implied warranties of fitness
is sufficient if it states, for example, that “There are no warranties which
extend beyond the description on the face hereof.”

(c)       Notwithstanding
Subsection (b)

(1)       unless
the circumstances indicate otherwise, all implied warranties are excluded by
expressions like “as is,” “with all faults” or other language which in common
understanding calls the buyer’s attention to the exclusion of warranties and
makes plain that there is no implied warranty; 

 

Tex. Bus. & Com. Code
Ann. § 2.316(b) (Vernon 2009).